UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANISSA JONES, | ) |
| | ) |
| PLAINTIFF, | )    Civil Action No. 15-CV-505(BAH/GMH) |
| | ) |
| vs. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |

PLAINTIFF'S POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

I.    FACTUAL BACKGROUND

The Plaintiff and minor Student in this proceeding are and were residents of the District of Columbia during all material times. Anissa Jones is the parent of D.M, a minor Student who suffers from a diagnosed disability such that D.M. requires special education services pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. 1400, et seq. (herein "IDEA"). Pursuant to IDEA, Defendant, through the District of Columbia Public Schools system (herein "DCPS") is required to provide a Free And Appropriate Education (herein FAPE) that accommodates the given disability of each child who resides in the District of Columbia.

In November 2014, Elizabeth Jester, Esq. (undersigned counsel) undertook representation of Plaintiff concerning the special education needs of D.M. Enforcement of Plaintiff's IDEA rights were accomplished by means of an administrative proceeding brought pursuant to IDEA. By way of a Hearing Officer's Determination (herein HOD) issued after the conclusion of an administrative due process hearing, Plaintiff was the prevailing party and D.M.

was found to be entitled to specified special education services that DCPS had failed/refused to

provide.  (Ex. 1)   However, the hearing officer also ruled against Plaintiff on several issues.  On

September 16, 2015, Plaintiff filed an appeal of the HOD.   The appeal of the HOD was assigned

to this honorable Court.   This Court referred the case for assignment to a magistrate judge.    On

September 22, 2015, the case was assigned to Magistrate Judge G. Michael Harvey.

During the pendency of this matter in front of Magistrate Judge Harvey, Plaintiff, through

counsel, filed another administrative due process complaint on behalf of Plaintiff and D.M.   This

additional administrative complaint was necessitated by the fact that D.M.'s emotional and

behavioral state had deteriorated to the point that D.M. required a residential school placement.

On January 31, 2017, Magistrate Judge Harvey issued his Report and

Recommendations finding that the hearing officer had erred and recommended, *inter alia*, that

Plaintiff be accorded the right to an independent education evaluation (herein IEE)(ECF 30).

However, at that point, D.M.'s emotional and behavioral state had deteriorated to the point that

he was not emotionally available to participate in the IEE and refused to cooperate with testing.

As a result of the 2nd administrative hearing (herein 2nd HOD) Defendant was ordered to

evaluate D.M. and determine if he in fact required placement in a residential school.  (Ex. 2)

Defendant took several months over the summer of 2017 to identify a clinical psychologist and

arrange for the evaluation ordered via the 2nd HOD.  D.M. was very resistant and absconded

when it was time for the evaluation.  By August/September 2017 the psychologist informed the

parties that he had gathered enough information and issued a report recommending placement in

a residential school.  Over the course of the fall of 2017, the parties worked to identify a

residential school for D.M.  In December 2017 arrangements were finally made to enroll D.M. in

a residential school.  However, upon arriving at the school, D.M. refused to cooperate with the

admission process and left the residential school without enrolling.  D.M. subsequently refused to

attend school until, upon information and belief,  April 2018.  During the period of the spring

2017 until the spring of 2018, despite the best efforts of Plaintiff, D.M. would not participate in

the IEE due to his emotional/behavioral state.  During this time period, it was Plaintiff's hope

that once D.M. was enrolled in and attending a residential school his emotional state and

behavioral would be addressed and he would then be available to participate in the IEE.

All of the above background is the underpinning of why there was such a delay in

bringing closure to the instant case.

II.   DEFENDANT IS LIABLE UNDER IDEA TO  PLAINTIFF FOR THE REASONABLE
      ATTORNEY FEES INCURRED BY PLAINTIFF

20 U.S.C. 1415 (e) provides that:

> [I] n any action or proceeding brought under this subsection, the court, in its discretion,
> may award reasonable attorneys' fees to the parent or guardian of a handicapped child or
> youth who is the prevailing party.

A.   Plaintiff Was The Prevailing Party in a Complex Proceeding Brought Pursuant to IDEA

Plaintiff was the prevailing party in an administrative proceeding brought pursuant to

IDEA.  Plaintiff's claim for attorney fees arises from a matter that was concluded by means of a

hearing officer's determination which altered the legal relationship of the parties.  (Ex. 1)

B.   The Attorney Fees And Costs Sought By Plaintiff Are Reasonable

Recently the U.S. Court of Appeals for the D.C. Circuit has addressed the issue of

attorney fees under fee shifting statutes. *Eley v. District of Columbia*, 999 F. Supp. 2d 137

(D.D.C. 2013) *vacated and remanded*, 793 F.3d 97 (D.C. Cir. 2015).  In *Eley*, the Court set forth

3

a three part test to determine the reasonableness of attorney fees requested by a prevailing party in a case that provides for fee shifting: 1) the number of hours billed; 2) reasonableness of the hourly rate; and 3) applicability of a multiplier or enhancement. 1/

    1.   <u>The Number of Hours Billed</u>

Plaintiff submits that the number of hours billed is reasonable on its face for the work that was needed to successfully pursue this case.  Documentation as to the reasonableness is set forth in Ex. 3 which contains detailed descriptions of the work performed.  (Ex. 3)

    2.   <u>Reasonableness of the Hourly Rate</u>

To determine the reasonableness of the fees being requested, the Court will look at: a) the attorney's billing practices; b) the attorney's skills, experiences, and reputation; and c) the prevailing market rate in the relevant community.  *Id*.

    a)   <u>The Attorney's Billing Practices</u>

The amount of time expended by Elizabeth Jester in this matter was modest and reasonable.  The amount of time spent on behalf of Plaintiff is set forth in an invoice which contains detailed descriptions of the work performed.

As set forth in the attached Affidavit of Elizabeth Jester, Esq.,  contemporaneous, accurate, and complete records of all the time spent providing legal services in connection with this matter were maintained.  (Ex. 4)  Those records, which contain a detailed summary description of time and services rendered on a daily basis, were entered by a paralegal under counsel's direction into a computerized billing program which generated the fee invoice which is

---

1/  IDEA specifically prohibits the use of a multiplier so that issue is not applicable in this case.

attached as part of Ex. 3.  The invoice entries describe the legal services and attendant time spent

on specified tasks.  All time was billed in tenths of an hour.  Undersigned counsel personally

reviewed the billing memorandum for accuracy and to confirm that the tasks for which

compensation was being sought were necessary to the successful pursuit of Plaintiff's claim.

Billing judgment is exercised by either not including on the invoice at issue any time that was

excessive, not warranted, or not directly connected with the matter at issue.  (Ex.3)

    b)   The Attorney's Skills, Experiences, and Reputation

The attached Affidavit of Elizabeth Jester, Esq. details undersigned counsel's education,

skills, and experience.  (Ex. 4)  Ms. Jester has been practicing law for 35+ years.  Her practice is

limited to special education law and includes extensive experience litigating in D.C. Superior

Court, U.S. District Court for the District of Columbia and the U.S. Court of Appeals for the

D.C. Circuit in addition to administrative proceedings.  (Ex. 4)  Details of her teaching

experience, litigation experience, etc. are set forth in the attached Affidavit and clearly establish

her extensive skills and experience in the area of special education law.  (Ex. 4)  Ms. Jester's

reputation is such that she routinely is asked to:  instruct new lawyers on the CCAN Panel in

D.C. Superior Court; speak at a variety of conferences on the issues involved in special education

litigation; and accept appointments as the education attorney in neglect and juvenile cases by

various D.C. Superior Court judges.  (Ex. 4)

    c)   The Prevailing Market Rate in the Relevant Community

The work of Plaintiff's counsel is to be valued at a rate which reflects the customary

fee for similarly complex work and the experience, reputation and ability of the individual

attorney.   Once established, a plaintiff is entitled to have her attorney's fees reimbursed at the

5

prevailing market rate.   Covington v. District of Columbia, et al., 313 U.S. App. D.C. 16, 57

F.3d 1101(1995).   Accord, Hensley v. Eckerhart, 461 U.S. 424, 447 (1983).   See, e.g., Bailey v.

District of Columbia, 839 F. Supp. 88 (D.C. 1993).

> In *Eley* the Court recognized that:

> Determining the prevailing market rate is "inherently difficult".   *Blum*, 465 U.S.
> at 895 n. 11.   Even so, "[t}he complexity of the market for legal services does
> not ... reduce the importance of fixing the prevailing hourly rate in each particular
> case with a fair degree of accuracy."   *Nat'l Ass'n of Concerned Veterans v. Sec'y of
> Def.*, 675 F. 2d 1319, 1325 (D.C. Cir. 1982).   Thus a fee applicant must "produce
> satisfactory evidence – *in addition to* the attorney's own affidavits – that the
> requested rates are in line with those prevailing in the community for similar services
> by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465
> U.S. at 895 n.11 (emphasis added); see also *Nat'l Ass'n of Concerned Veterans*,
> 675 F.2d at 1325 ("An applicant is required to provide *specific* evidence of the
> prevailing community rate for the type of work for which he seeks an award."
> (emphasis added)

*Eley* at 100.

 As set forth below, Plaintiff is supporting this attorney fee petition with "specific

evidence of the prevailing community rate" as may be discerned from: 1) the U.S. Attorney's

Office Attorney Fees Matrix (herein USAO Matrix);  2) independent fee surveys; and

3)  affidavits from attorneys who practice special education law in the District of Columbia.

    1.  The U.S. Attorney's Office Attorney Fees Matrix

In order to provide adequate support for the requested rates, the moving party may submit

attorney fee matrixes as one type of evidence.  In the instant case, Plaintiff's attorney's hourly

rates are in line with the USAO Matrix. (Ex. 5)  The   USAO Matrix is a schedule of prevailing

rates and is adjusted annually to reflect current market rates. 2/  *Eley*, at 101-102.  In 2015 the U.S. Attorney's Office for the District of Columbia developed its own updated Attorney's Fees Matrix and has since supplemented it.  The USAO Matrix is used to "...evaluate requests for attorney's fees in civil cases in the District of Columbia courts.  The Matrix is intended for use in cases in which a fee shifting statute permits the prevailing party to recover "reasonable" attorney's fees."  (Ex. 5 at n.1)  The USAO Matrix, as updated and supplemented, provides specific evidence of the prevailing market rates for attorneys in the District of Columbia.  (Ex. 5)

   In the instant case, Plaintiff's attorney's hourly rates track those rates which are reflected in the USAO Matrix. (Ex. 5)   Elizabeth Jester, Esq., with currently 35+ years of legal experience, has billed at the rate in place at the time services were rendered.

   2.   Surveys of Attorney Fees

   The *Eley* Court also recognized that support for the prevailing market rates could be found in surveys of attorneys.  In further support of her application for attorney's fees, Plaintiff has attached the 2015 and 2013 Survey of Attorney Compensation conducted by the National Law Journal. (Ex. 6 and Ex. 7) The rates reflected in these surveys for attorneys in the D.C. area are above the USAO Matrix rates requested by Plaintiff's attorney.  (Ex. 6 and Ex. 7)   3/

_____

2/  Prior to 2015, the U.S. Attorney's Office formulated what was referred to at The USAO *Laffey* Matrix.  There is also a version of the *Laffey* Matrix which reflects legal-services inflation (LSI) instead of just general inflation.  The rates in the LSI *Laffey* Matrix are higher than the rates in the prior USAO *Laffey* Matrix.  While Plaintiff is not conceding that the LSI *Laffey* Matrix rates are inapplicable, in the instant case, Plaintiff is only seeking rates in line with the USAO Fee Matrix.  A detailed explanation of the differences in the Matrixes and how the rates are calculated is set forth in *Eley.*

3/  The 2013 Survey of Compensation of Attorneys conducted by The National Law Journal was appended as an exhibit in the *Eley* case on remand.  Case No.  11-cv-00309 (BAH) ECF Document 50-7.

3.  <u>Affidavits of Attorneys Who Practice in the District of Columbia Regarding Their Hourly Rates</u>

The *Eley* Court also recognized that evidence of the prevailing market rate for reasonable hourly rates for attorney fees in the community could be found in affidavits of attorneys who practice in the community.

In *Wimbish et al. v. District of Columbia*, (Case No. 15-1429 and 15-2182 (EGS) (May 3, 2017) the Court found that plaintiff demonstrated via affidavits from attorneys who practice IDEA litigation in the District of Columbia that the rates customarily charged by IDEA attorneys in the District of Columbia are on par with the rates set forth in the USAO Matrix. The affidavits in the *Wimbish* case included an affidavit from undersigned counsel.  Plaintiff respectfully requests that the finding of Judge Sullivan in the *Wimbish* case, based on the 9 affidavits which are public record in the *Wimbish* case, be incorporated by reference and considered and applied in the instant case. <u>4/</u>   Plaintiff further respectfully requests that this honorable Court take judicial notice of these 9 affidavits and their contents.  Doing so prevents attorneys such as the undersigned from continually seeking affidavits from other practitioners and presenting the same evidence to this honorable Court every time a lawsuit for fees is filed.  This also keeps the cost of the fee litigation down.

_____

<u>4/</u>    The affidavits in the *Wimbish* case were submitted by the following attorneys, all of whom are IDEA practitioners in the District of Columbia:  Douglas Tyrka ECF No. 17-11; Diana Savit ECF No. 17-12; Emily Read ECF No. 17-9; Maria Mendoza ECF No. 17-14;  Domiento Hill ECF No. 17-15; Alana Hecht ECF No. 17-16; Pierre Bergeron ECF No. 17-17; and Nicholas Ostrem ECF No. 17-10.  Undersigned counsel also submitted an affidavit in the *Wimbish* case which was relied upon by the Court: Affidavit of Elizabeth Jester at ECF No. 17-13.

In addition, the affidavits of these attorneys and the affidavit of undersigned counsel detail how USAO Matrix rates are needed to attract competent counsel. Special education law is a unique area requiring particularized knowledge and skills. IDEA and local regulations set forth an administrative framework the attorney must utilize to obtain effective relief for the client. The attorney must have a working knowledge of the intricacies of this administrative process. Furthermore, a successful administrative outcome can only occur when the attorney has mastered not only the inner workings of a public bureaucracy (DCPS) but the substantive issues presented by a student whose educational needs are affected by, *inter alia*, physical, emotional, psychological, and cognitive issues. These fields of study are continually evolving. Therefore, in addition to overcoming a learning curve that is common to most specialities, a special education attorney must stay current with the nuances of a myriad of disabilities and the appropriate approaches, responses, therapies, and accommodations necessary for the student. Accordingly, significant weight should be given to the declarations of the special education attorneys who spend their professional days representing parents of children with special needs.

Attached as Exhibits 8 through 12 are affidavits from 5 different law firms and attorneys that practice special education law in the District of Columbia. All support Plaintiffs' position that the market rate for attorney fees for prevailing parties in IDEA cases is in line with the USAO Attorney's Fees Matrix. (These affidavits were all prepared for other attorney fee litigation undersigned counsel was involved with.) Based on undersigned counsel's experience, knowledge, and conversations with other special education practitioners, almost all of the attorneys in the District of Columbia who practice special education law are of the view that the market rate for attorney fees in IDEA cases lines up with the rates set forth in the USAO

Attorney's Fees Matrix.

C.   The Instant Case Is Complex Litigation and The Administrative Record, Witnesses
     and Exhibits Support the Complexity of This Case

        IDEA litigation, at both the administrative level and the federal court level is complex

litigation brought pursuant to a federal statue, *i.e.* IDEA.  The instant case involved a minor

student who presented with complex emotional, behavioral, and academic disabilities with an

IDEA classification of Emotionally Disturbed.  (Ex. 1)   As set forth in the extensive findings of

fact in the HOD, the Student struggled in school and performed poorly academically.  *Id*.  The

Student also had difficulties in the social and emotional areas.

        Plaintiff repeatedly requested changes to the Student's program and placement.  However,

 DCPS not only refused to offer a small class setting but refused to offer any type of intensive

special education support to address these issues.  (Ex. 1)   Plaintiff was left with no option but to

pursue a due process hearing pursuant to IDEA in order to obtain appropriate education services

for her child.

         Plaintiff's administrative hearing record involved 55 exhibits totaling over 340 pages.

(Ex. 13)   The exhibits included, *inter alia*, multiple reports of a litany of evaluations:

psychological evaluations, speech/language evaluations, educational evaluations, behavioral

evaluations, and numerous IEPs.  (Ex. 13)  Other exhibits included, *inter alia*, report cards,

disciplinary records and miscellaneous school records.  (Ex. 13)  Plaintiffs listed 6 witnesses in

their disclosure statement. (Ex. 13)  D.C. Public Schools disclosed 7 witnesses to testify at the

hearing and 35 exhibits with over 105 pages.  (Ex. 14)  These individuals were all scheduled to

testify concerning the Student's eligibility/ineligibility for certain special education services and

school placement options made available by DCPS.  (Ex. 14)

A prehearing conference was also held and the hearing officer issued a 16 page detailed Prehearing Order. (Ex. 15)    In this Prehearing Order the Hearing Officer was clear that: "The parties final witness list will be provided at the time of disclosures."  (Ex. 15 at 10)   The disclosure statement is filed a mere 5 business days prior to the hearing.  (Ex. 15 at 10)

An administrative due process hearing was held on June 5 and June 15, 2015.  (Ex. 1) On June 22, 2015, the Hearing Officer issued a 77 page Hearing Officer's Determination (Ex. 1). The Hearing Officer found that D.C. Public Schools denied the student a Free and Appropriate Public Education (herein FAPE).  (Ex. 1)   The Hearing Officer then ordered DCPS to convene an IEP meeting and amend the IEP to provide all of the Student's academic instruction outside of the general education setting.  DCPS was further ordered to fund an IEE and convene an IEP meeting to review the results of the IEE and develop a Behavior Intervention Plan.  A third IEP meeting was ordered to be convened 30-45 days after the above occurred to review the Student's progress.  (Ex. 1)

Due to extensive prehearing preparation, undersigned counsel was familiar with and conversant in every portion of the exhibits set forth above, including a working knowledge of how to read and interpret the reports from multiple evaluations and reports from a variety of disciplines and then tie  all of that into the numerous educational issues the Student presented with and the appropriate way to address those various issues.    As a result, the Hearing Officer ordered the relief set forth above, which was  significant relief sought by Plaintiffs.

As a result of proceeding through a long and arduous hearing, D.C. Public Schools was ordered, via the HOD, to provide to the Student with intensive special education services

11

sought by Plaintiff.

Judge Kessler of this honorable Court addressed the issue of attorney fees in IDEA

cases and the complexity of these cases in *Cox v. District of Columbia*, slip opinion issued

December 9, 2010 (D.C.D.C.  Kessler, J.)  In her Memorandum Opinion, Judge Kessler, after

describing the student's situation, opined that:

> ... it was only after the child's parent filed a Due Process Complaint and received
> a full evidentiary hearing, that, thanks to the Hearing Officer ...  DCPS was
> ordered to place the child  ...  where he would receive the services he needed and
> to which he was entitled.

*Cox*, *id.* at 4.

Judge Kessler, in finding that undersigned counsel's rates were reasonable opined:

> [i]t is … worth noting that in order to handle special education cases effectively,
> counsel must know far more than IDEA in order to cope with the obstructive and
> delaying practices of DCPS.  Sad to say, to be effective – i.e., to get services,
> education, and treatment for their young clients – it is essential that counsel
> understand the bureaucratic workings of that system, know competent and caring
> individuals in that system who can break logjams and obtain necessary
> evaluations, reports, and materials, and then assure provision of whatever FAPE is
> deemed appropriate.  To accomplish this goal takes diligence, perseverance,
> persuasiveness, and negotiating and inter-personal skills – as well as the
> traditional legal skills expected of any competent lawyer….[A]pplication of the
> Laffey Matrix is appropriate here.

*Eley* at 100.

Judge Walton of this honorable Court agreed with Judge Kessler in *Garvin*

*v. D.C.*, Case No. 11-cv-383 (RBW) (ECF #16)(March 30, 2012).  After reciting the

complex facts of the case, Judge Walton stated: "This Court agrees with the plaintiffs that

the underlying litigation was complex and that the *Laffey* Matrix is an appropriate

measure for attorney's fees in this matter."  *Garvin*, at 8.

Magistrate Judge Deborah Robinson has also found that an IDEA case handled by undersigned counsel was complex and warranted an award of attorney fees at *Laffey* rates. *Gaston. D.C.*, Case No. 14-01249 (DAR/TSC) (Aug. 26, 2015)(ECF #16).   As in the *Garvin* case, after analyzing the facts of the case, Magistrate Judge Robinson stated: "The underlying administrative proceedings  which are at issue in this action are of sufficient complexity that attorney's fees must be awarded at counsel's *Laffey* rates, and the Court so recommends." *Gaston*, at 10.  Magistrate Judge Robinson's Report and Recommendation was affirmed by the Judge Tanya Chutkan on Sept. 10, 2015.

As set forth above, the instant case was not a simple  piece of litigation.   This was a complex hearing which required knowledge of the procedural rules, the substantive rules and, more importantly a working knowledge of the complex educational issues and the factors underlying/comprising the Student's complex disability of autism and how the Student's needs could be appropriately addressed.  5/

_____

5/    Plaintiff is not suggesting that in order for an attorney's hourly rate to be reasonable, the administrative case must be as complex as the instant case.  The expertise of the attorney representing the student's family is tested in many areas such as procuring appropriate records.  At the middle school level, a student's records are kept by numerous people in numerous places: Disciplinary records are kept by a vice principal or other person designated by the principal, attendance records are kept by an attendance officer and/or teachers, cumulative file is kept in the front office and the special education records are kept by the special education coordinator.  The attorney must be experienced enough to know what to ask for, who to ask, how to read the records, and sometimes, most importantly, to recognize when records are missing.  This may sound fairly simple but obtaining records is actually a complex endeavor and the records are usually in a state of disarray.  The records, however, are usually the cornerstone of the case.

D.    CASELAW

Judges in the District of Columbia have routinely used the USAO Matrix as a starting point to determine reasonable attorney fees in IDEA cases and have awarded fees commensurate with the USAO Matrix.  There have been several recent cases which awarded rates commensurate with the USAO Matrix.

In *Dobbins v. District of Columbia*, 2016 CV 01789 (DAR)(ECF No. 15-1)(Sept. 29, 2017), the Court relied upon the USAO Matrix and awarded rates commensurate with the USAO Matrix.  *See also,  Daniels v. District of Columbia*, 14-CV-665 (DAR)(March 27, 2012); *Shaw v. District of Columbia*, 15-CV-927 (RCL) (Sept. 28, 2016);  *Joaquin v. District of Columbia*, 14-CV-1160 (RCL)(Sept. 28, 2016); *Young v. Sarles*, (BAH)(July 11, 2016); *Flood v. District of Columbia,* 15-CV-497 (BAH)(March 25, 2016); and *Sweatt v District of Columbia*, 82 F. Supp. 3d 454 (D.D.C. 2015)(Judge Amy Berman Jackson)

The *Laffey* Matrix, predecessor to the USAO Matrix (see footnote 2 above), was applied by Judge Kessler of this honorable Court in two separate cases involving attorney fees pursuant to IDEA.  <u>Ward  v. D.C.</u>, Civil Action No. 09-1874 ( April 11, 2011) and <u>Cox v. D.C.</u>, Civil Action No. 09-1720 (slip opinion issued December 9, 2010). It was also recognized as applicable by Judge Walton of this honorable Court in <u>Garvin v. D.C.</u>, Civil Action No. 11-383   (March 30, 2012) and Magistrate Judge Robinson in *Gaston v. D.C.*, Civil Action No. 14-01249 (August 26, 2015).   <u>6/</u>

_____

6/ Undersigned counsel was counsel of record in the *Cox, Garvin, Gaston, Sweatt, and Dobbins* cases.

The purpose of having a matrix such as the USAO Matrix is so that individual litigants, such as Plaintiffs, are not compelled to undertake a scientific survey of rates in the D.C. area every time that an attorney fee case is filed. Rather, the USAO Matrix sets forth exactly how the rates were calculated and the data used to conduct the calculations. Individual plaintiffs and counsel such as undersigned counsel, simply do not have the resources to conduct surveys and hire economists to calculate prevailing market rates. Rather, this work is done via the USAO Matrix.

Use of the USAO Matrix would most likely result in the end of the large number of IDEA attorney fee cases. Each side would have a fairly clear idea of what to expect, *i.e.*, what is reasonable in terms of hourly rates. Currently there is much litigation surrounding the issue of IDEA attorney fees. Undersigned counsel has several attorney fees cases pending with the expectation that at least 1 more will be filed in the near future. This is a waste of time, energy, and resources. With a level of certainty regarding hourly rates, this litigation could be avoided.

Several years ago Magistrate Judge Faciola of this honorable Court recognized that several judges of this honorable Court use the *Laffey* rates "... as an appropriate starting point for determining rates of reimbursement for attorneys who challenge the decisions of the DCPS." *Brighthaupt, et al. v. District of Columbia*, Civil Action No. 13-1294 (slip opinion April 2, 2014) (JMF) at 4. The Court went on to opine that "... there is no reason to disturb the status quo unless and until reasoned alternatives are proposed." Id. at p. 6. Quoting *Moss v. District of Columbia*, Magistrate Judge Facciola found:

> Until DCPS offers sufficient proof that its rates represent the true prevailing
> rates in this community and the *Laffey* rates represent an unreasonable windfall
> above what lawyers in IDEA cases actually charge their clients, they make use
> of the *Laffey* rates as a starting baseline inevitable.   DCPS is yet to offer an
> alternative baseline and proof that it is an accurate measure of the rates that truly
> prevail in the community of lawyers who handle IDEA cases.

*Moss v. District of Columbia*, Civil Action No. 11-CV-994 at 3 (slip opinion issued July 12, 2012).

Of interest is to note that in 2003 undersigned counsel filed a lawsuit for IDEA attorney fees with the same factual underpinnings as the instant case: the plaintiffs in that matter were all parents/guardians who were prevailing parties at administrative due process hearings brought pursuant to IDEA and were seeking to recover attorney's fees for the work performed at the administrative hearings.  The work in question was performed during 2002 and (possibly) 2001.   At that time, *i.e.*, 2002, undersigned counsel's billing rate was $280 per hour.  That case was heard by Judge Kessler of this honorable Court.  In the Order issued by Judge Kessler which granted Plaintiffs' Motion for Summary Judgement in its entirety, Judge Kessler found that "Defendant concedes that the hourly rates Plaintiffs seek, i.e., an hourly attorney rate of $280 and an hourly paralegal rate of $90 are reasonable."   <u>Holbrooke, et al. v. District of Columbia</u>, Civil Action No. 03-640 (GK) (opinion issued February 5, 2004).   Defendant is hard pressed to admit that undersigned counsel's  rate of $280 per hour was reasonable in 2002 but that her rate of $568 per hour is not reasonable over thirteen years later in 2015.

16

In *Cox v. D.C.*, *supra*, Judge Kessler of this honorable Court affirmed that Elizabeth Jester's rate of $400 per hour was reasonable for work performed during calendar year 2009. $400 per hour had been the hourly rate charged by undersigned counsel for calendar years 2008 and 2009. In light of increased overhead, expenses, etc., Undersigned counsel raised her hourly rate by $50 to $450 per hour effective January 1, 2010 and maintained that hourly rate for work performed during calendar year 2011 and 2012. Undersigned counsel raised her rates again in 2013 to $505/$510 per hour due to increased overhead, expenses, etc. These rate increases over the last several years are reasonable and reflect the increased cost of maintaining and running a private law practice in the District of Columbia. By the summer of 2015, undersigned counsel raised her rates to $568, again to reflect increased overhead and expenses of maintaining a law office. Such modest increases were fair and reasonable and were consistent with the then *Laffey* Matrix rates.

E.     Wage Theft Prevention Amendment Act of 2014

Pursuant to the Wage Theft Prevention Amendment Act of 2014, prevailing parties in actions to enforce certain wage and hour laws ***shall*** have their attorney fees reimbursed at the enhanced *Salazar*/LSI Matrix. This is mandatory, not optional. D.C. Code Sec. 32-1308(b)(1). This applies to the administrative level. *Id.* at 32-1308.01(m)(1). In addressing this issue in *Flood*, an IDEA attorney fee case, this honorable Court noted:

> Given the District's judgment that reimbursement at *enhanced Laffey* rates
> is presumptively appropriate in administrative actions to vindicate an employees
> right to legal compensation from their private employer, the Court sees no reason

why attorneys who successfully demonstrate that the District itself has violated the rights of disabled children to a free and appropriate public education should be compensated at a rate *below* those proposed by Plaintiff.

*Flood, Id.* at slip opinion 37-38 (emphasis in original).

F.    Paralegal Fees and Costs Sought By Plaintiffs Are Reasonable

The invoice presented as Ex. 3 contains very limited charges for work performed by a paralegal.   Paralegal Mery Williams has formal paralegal training and over eighteen years of experience as a full-time paralegal.  Mery Williams was not a full-time paralegal during the pendency of the underlying case.  Rather, she assisted only with the preparation and submission of attorney fee petitions.   The work delegated to her was necessary to the litigation and would need to be performed by Elizabeth Jester at a much greater cost if paralegal services were not available.  Mery Williams has been billed at the rate of $154 per hour for her work on the case that is the subject of the instant litigation. This rate is in line with the USAO Matrix.  (Ex. 5)  Ms. Williams' hourly rate and services performed were found to be reasonable by numerous judges of this Court including Judge Kessler in *Cox*.

Plaintiffs seek reimbursement for mileage at the rate of $ .54 per mile, the rate paid by the U.S. Government/GSA to reimburse milage in 2016.  8/    See: POV Mileage Rates (Archived), U.S. General Services Administration

http://www.gsa.gov/portal/content/103969

_____
8/ The rate for 2015 was 57.5.  However undersigned counsel has billed mileage for 2015 and 2016 at the lower 2016 rate of .54.

Plaintiffs also seek reimbursement for photocopying costs of $ .25 per page. This is the rate paid by D.C. Superior Court.  (Ex. 16)  9/

Reimbursement for parking at the administrative hearing for undersigned counsel is the actual cost paid to the independent parking lot operator and/or public street meters.  A receipt for this expense is attached as part of Ex. 3.

III.    A REASONABLE HOURLY RATE SHOULD TAKE INTO ACCOUNT THE DELAY BETWEEN PROVIDING LEGAL SERVICES TO PLAINTIFF AND THE ACTUAL AWARD AND PAYMENT FOR THESE SERVICES

Undersigned counsel's services to Plaintiff in this case began November 13, 2014. (Ex. 3)

It is unclear what process DCPS has in place to review and make payment on legitimate attorney fee invoices for parties who prevail in IDEA cases.  This means that in order to receive payment, Plaintiff must wait until all work on the matter is completed and then file a complaint with this honorable Court.  By the time the case proceeds through the briefing schedule and an order resolving the case is issued, at least one year, if not more, will have passed.  Once the order is issued, payment is still another 30-60 days away, if not longer.   Plaintiff respectfully requests that this significant time lag be considered in analyzing the reasonableness of undersigned counsel's hourly rates.  The

_____

9/    Exhibit 16 is a screen shot of the "expense" page from the D.C. Superior Court Web Voucher System.  This is the voucher system used for payment of CCAN and CJA attorneys who accept court appointed cases in Superior Court. The name of the student has been redacted.  This voucher is not for the student at issue in  this case.  It is being offered as proof of the photocopying rates paid by D.C. Superior Court.

many issues created by this lengthy period of time that lapses between prevailing at the administrative hearing and actually getting paid has caused many issues for many attorneys who engage in practicing in this area of law.   Undersigned counsel has significantly reduced the number of IDEA cases that she will undertake due to the difficulties of getting paid if her client is successful.  This has certainly produced a chilling effect on the number of attorneys who are willing to undertake IDEA litigation and severely limited indigent parents' ability to access competent and available representation.

IV.    CONCLUSION

This lawsuit is one of dozens of lawsuits filed within an approximate 16-17 year period by undersigned counsel for the purpose of requiring Defendant to pay attorneys fees and costs incurred by parents who were prevailing parties in matters brought pursuant to IDEA.  Undersigned counsel currently has several attorney fee cases pending in this honorable Court and anticipates that at least 1 more will be filed in the very near future. By failing to make fair and timely payments, Defendant has caused a severe chilling affect on the market for attorney's services for these and similarly situated parents and students.  In all likelihood, the Plaintiffs named in this litigation comprises a minuscule percentage of the special education students who are being harmed as a consequence of Defendant's repeated and consistent failure to pay attorneys' fee petitions in full on a timely basis.

Because there is no genuine dispute as to any issue of material fact and Plaintiff is entitled to judgment as a matter of law, Plaintiff respectfully requests that this

honorable Court grant Plaintiff's and award Plaintiff the costs and attorneys' fees incurred

as a consequence of bringing this action in the amount of $ 87,738.93.


Respectfully submitted,

/s/ *Elizabeth T. Jester, Esq.*
Elizabeth T. Jester, Esq.
JESTER AND WILLIAMS, LLC
P.O. Box 1165
Great Falls, VA 22066
Telephone: 703-757-8375
Fax: 703-757-8378
D.C. Bar Number 386813
*Not admitted to practice in VA*


signed electronically