UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANISSA JONES, )<br>)<br>PLAINTIFF, )<br>)<br>vs. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>DEFENDANT. )<br>) | Civil Action No. 15-CV-505(BAH/GMH) |

## AFFIDAVIT OF ELIZABETH T. JESTER, ESQ.

I, Elizabeth T. Jester, Esq., being of legal age, hereby declare and state the following:

1. I am a partner at the law firm of Jester and Williams and I submit this Affidavit in support of reimbursement of attorney fees and expenses incurred by Plaintiffs.

2. I received a Bachelor of Arts Degree in Economics from Boston College, *magna cum laude*, in 1976. I am a 1980 graduate of Catholic University School of Law where I was a member of the Catholic University Law Review and a National Moot Court Team. I am a member of the Bar of the District of Columbia and have been a member of this Bar since March 1985. I formerly was a member of the Bar of the Commonwealth of Pennsylvania and was admitted to that Bar in December 1980. I am admitted to practice in the United States District Court for the District of Columbia, United States Circuit Court of Appeals for the District of Columbia, and the United States Circuit Court of Appeals for the Fourth Circuit. For the last approximately 30+ years my legal practice has been and is currently confined solely to the District of Columbia.

1

PLAINTIFF'S EXHIBIT 4

3. Prior to joining Jester and Williams, I served for approximately four years as staff attorney in the Office of the Chairman, National Labor Relations Board; approximately one year as Senior Counsel to the Honorable John Fanning, Chairman of the National Labor Relations Board; and approximately one year as Senior Counsel to the Honorable Donald Dotson, Chairman of the National Labor Relations Board.

4. Since entering private practice in 1987, my focus has been primarily on children's rights issues. To this end I have represented numerous children and their families concerning housing and lead paint poisoning issues, including the disabilities inflicted on a child who is lead poisoned. I have been the featured speaker at several national lead poisoning conferences; spoken at the D.C. Bar Annual Convention on the issue of lead poisoning; and worked with several community groups in this area.

5. I am also on the D.C. Superior Court Family Division panel of attorneys approved to accept Special Education Attorney appointments and have been on this panel since its inception. I have been an instructor at CLE courses sponsored by D.C. Superior Court and the Public Defender Service for the District of Columbia concerning special education issues. I was a presenter at a seminar concerning both attorney fees in special education cases and federal court litigation in IDEA cases at the 2010 BADC 21st Annual Neglect and Delinquency Practice Institute which was held at The University of the District of Columbia during March 2010. I was a presenter at the 2011 BADC 22nd Annual Neglect and Delinquency Practice Institute which was held at The University of District of Columbia in March 2011 on the topic of how to conduct due process hearings pursuant to IDEA. I also presented at the BADC Annual Neglect and Delinquency Practice Institute in March 2014 and March 2015 on special education issues. I

participated as an instructor for the annual training programs conducted by the D.C. Public Defender Service in March 2010, June 2011, May 2012, May 2013, November 2013 and January 2015 for new special education attorneys who have recently been added to the D.C. Superior Court CCAN panel. At these trainings conducted by the Public Defender Service I presented on two topics: ethical considerations for special education attorneys and attorney's fees in special education litigation pursuant to IDEA.

6. Specifically, concerning special education, I have represented hundreds of District of Columbia families in ascertaining the educational needs of their children with disabilities and procuring appropriate placements. My special education practice is limited to matters arising in the District of Columbia. I have participated in hundreds of administrative due process hearings pursuant to IDEA and procured countless settlement agreements in IDEA cases in the District of Columbia. I have not litigated special education cases in any other jurisdictions. I have been appointed by numerous judges in D. C. Superior Court in neglect and juvenile cases to represent parents/foster parents/surrogate parents/guardians concerning the educational needs of the children in their care who are wards of the District of Columbia. I also receive referrals of clients from Childrens Law Center, D.C. Public Defender Service and private attorneys in the community. Additionally, my extensive practice in the area of lead paint poisoning involved working with numerous professionals to ascertain the extent of neurological damage inflicted by lead and how this damage could be addressed through special education services.

7. With respect to my federal court litigation experience, I have successfully litigated approximately 25 Motions for Preliminary Injunction in the *Blackman/Jones* class action lawsuit in this Court before Judge Paul Friedman. I have successfully litigated in this Court a

preliminary injunction case concerning the "stay-put" provision of IDEA which resulted in DCPS agreeing to maintain the placement of a child in the placement ordered by the hearing officer. *Stewart v. D.C.*, Judge Emmit Sullivan (file in storage–cite unavailable). I was lead counsel in *Davis, et al. v. D.C.*, Case No. 03CV00639 (EGS), a case which involved the need for timely transcripts and functioning recording equipment at the DCPS Student Hearing Office. As a result of the court approved settlement in that case, DCPS agreed to, *inter alia*, provide new recording equipment to record the hearings conducted at The Student Hearing Office pursuant to IDEA and agreed to hire an in-house stenographer to transcribe the hearings as required by IDEA. I have also successfully litigated in this Court the appeal of several administrative hearing officer determinations, including: *Boddy v. D.C.*, Case No. 03CV1886 (GK), *Argueta v. D.C.*, 04CV00260(RCL), *George v. D.C.*, 04CV01669 (RWR), and *Green v. D.C.*, 05CV00550 (CKK).

8. I have been co-counsel in a case before the Court of Appeals for the D.C. Circuit and assisted in drafting the appellate brief. *Blackman, et al. v. D.C.*, Case No. 04-7139 (D.C. Cir.) (re: attorneys fees pursuant to IDEA after prevailing on motions for preliminary injunctions in the Blackman/Jones class action for Plaintiffs Harris, Timmons and Blackwell). In another case, before the Court of Appeals for the D.C. Circuit, *Boddy v. D.C.*, Case No. 05-7183, I was lead counsel and argued the case before the D.C. Circuit Court. As set forth in the points and authorities attached to the instant motion, I have initiated dozens of lawsuits in this honorable court concerning attorney fees for prevailing parties in administrative actions pursuant to IDEA.

9. I have served as co-counsel in numerous lead paint litigation cases in D.C. Superior Court, including *Williams v. Vel Rey*, Civil Action No. 92-432 (Judge Mitchell-Rankin), a case in

which the jury awarded over $2,300,000 in damages to the two minor plaintiffs for injuries sustained from being lead poisoned.

10. I am familiar with the prevailing market rates for legal services in the Washington D.C. Area. The rates charged by me as set forth on Ex. 3 were the current market rates, or below current market rates, that existed at the time my services were rendered. These rates are well within the range of prevailing rates in the District of Columbia market for legal services in special education cases and related matters.

11. My billing rate as set forth in Ex. 3 is:

$520 per hour for work performed from November 2014 until May 2015;

$568 per hour for work performed from June 2015 until May 2016;

$581 per hour for work performed from June 2016 until May 2017; and

$602 per hour for work performed from June 2017 to the present.

12. My rates set forth above are equivalent to the rate set forth in the *Laffey* Matrix for attorneys with 20+ years of experience for 2014/2015 and the USAO Attorney Fees Matrix for the remaining years. (Ex. 5) Over the years, my rates and billing practices have been found to be reasonable and attorney fees at my requested rates were awarded to me by Judge Friedman, Judge Lamberth, Judge Bryant, Judge Sullivan, Judge Walton, Magistrate Judge Robinson and Judge Kessler in other cases brought pursuant to IDEA.

13. Recently the honorable Judge Kessler of this Court issued an Order that affirmed my billing practices and billing rates for April 2009 through August 2009 and found my rate of $400 per hour for that time period to be reasonable. *Cox v. District of Columbia*, (D.C.D.C. slip opinion issued December 9, 2010). Judge Walton of this Court issued an Order that affirmed my

5

then billing rate of $450 per hour was reasonable. *Garvin v. District of Columbia*, 11-cv-383 (RW)(D.C.D.C.) (ECF # 14). Magistrate Judge Robinson found that my billing rate in line with the *Laffey* Matrix was appropriate. *Gaston v. District of Columbia*, 14-cv-01249 (TSC/DAR) (ECF 16).

14. The billing rate of $154 per hour for my paralegal Mery Williams is reasonable and comports with the rates for paralegals set forth in the USAO Matrix and the *Laffey* Matrix. (Ex. 5) Ms. Williams has formal training as a paralegal and has worked with me in the past as a paralegal for approximately 19 years. Ms. Williams no longer works for me full-time and did not work full-time for me during the pendency of the instant case. Ms. Williams now assists solely with the preparation of attorney fee invoices, work that would have been done by me at a much higher hourly rate if her services were not available.

15. With the exception of the limited engagement of Mery Williams for the preparation of attorney fee petitions as set forth above, I have no support staff, secretary, or paralegal. I have a law partner but his practice consists entirely of criminal and civil litigation. He does not engage in any IDEA litigation and does not assist with my cases. For all intents and purposes, I am the only one who performs work on my cases and on behalf of my clients.

16. I have maintained contemporaneous, accurate and complete records of all the time I have spent providing legal services in connection with this matter. Those records, which contain a summary description of time and services rendered on a daily basis, were entered by a paralegal under my direction into a computerized billing program which generated the fee invoice which is attached as Ex. 3. I have personally reviewed this billing memorandum and aver that it accurately describes the legal services and attendant time spent on specified tasks. I further aver

that the tasks for which compensation is being sought were necessary to the successful pursuit of Plaintiff's claim. In my judgment these are reasonable amounts that would be billed in similar circumstances. I exercised billing judgment by not including on the invoice at issue any time that I felt was excessive, not warranted or not directly connected with the matter at issue. Time spent on matters that are not compensable, such as attendance at an IDEA mandated resolution meeting, are set forth on the invoice but marked as "No Charge".

17. Ex. 3 contains a description of the expenses which were reasonably incurred by Plaintiff. This description reflects expenses normally charged by my firm. The mileage rate (.54 per mile) and photocopy rate (.25 per page) I use are the rates endorsed by the federal government and D.C. Superior Court, respectively. (Ex. 16) 1/ This description was prepared under my supervision on the basis of the expense summaries prepared and maintained by me. I have personally reviewed these summaries and Ex. 3 is an accurate description of the reasonable costs and expenses associated with this matter.

18. Plaintiff has not received any payments from D.C. Public Schools for the attorney fees and costs set forth on this invoice.

19. Throughout this proceeding, I have endeavored to represent Plaintiff's interests in the fullest and most efficient way possible. I have endeavored to avoid any unnecessary duplication

---

1/ Ex. 16 is a screen shot of the "expense" page from the D.C. Superior Court voucher system for CCN and CJA attorneys. The name of the student and case number have been redacted. The student in the screen shot is not the student who is the subject of the instant matter.

of work. The time for which I am claiming compensation is detailed in Ex. 3. This time was reasonable and was necessarily expended on behalf of Plaintiffs' claims.

20. With very limited exceptions, my clients are indigent or unable to afford payment of attorney fees and costs. I "front" all costs of the litigation including, with few exceptions, those occasions I am required to pay expert fees. If the litigation is not successful, these costs are not recovered. Up until July 2016, even if the litigation on behalf of my client was successful, expert fees were not reimbursable at all. I simply had to absorb the cost of expert fees. It is my normal practice to bill clients who are not indigent at rates equivalent to the current *Laffey* Matrix rates.

21. For approximately 19 years I employed a full-time paralegal, Mery Williams. Due to the failure and refusal of D.C. Public Schools to reimburse my clients who were prevailing parties in their IDEA case for reasonable attorney fees and costs in a timely and fair manner, I was no longer able to afford to employ Ms. Williams. This resulted in a significant decrease in the number of clients that I was able to represent. In addition, Ms. Williams is a native Spanish speaker which allowed me to represent clients who spoke only Spanish. Due to not being able to employ Ms. Williams any longer, I am no longer able to represent non-English speaking clients. This has caused me to turn away many indigent Spanish speaking clients and therefore significantly limited the access to legal representation for these parents.

22. For the last approximately 8 - 10 years I have been forced to severely limit the number of IDEA cases that I accept due to the fact that to be paid for successfully pursuing a client's claim, I must also litigate for fees in federal court. The fee litigation process is lengthy and results in payments for attorney fees being made years after I have provided my services.

23. D.C. Public Schools takes the position that IDEA litigation is not "complex"

8

because there is no discovery such as interrogatories or depositions. The absence of discovery, however, makes the ligation much more complex than if discovery was available. For example, 5 business days prior to the hearing, the parties are required to produce all documents that will be offered as exhibits at the hearing. In virtually every case, despite detailed records requests prior to and during the pendency of the due process complaint, as part of their "5 day disclosure" DCPS produces documents, usually a very lengthy stack of documents, that counsel and the parent have never seen and were not aware even existed. However, in a *very* short time frame (5 business days), counsel must review, digest, discuss with the parent, and incorporate these documents into the issues presented at the hearing. A second example of the complexity created by the lack of discovery that actually occurred in the instant case is the inability to interview witnesses. There are no depositions in IDEA litigation. Because there is no access to DCPS witnesses (they are usually always DCPS employees who will not speak with a parent's attorney even if ethically permitted to do so) I was left to, at best surmise and at worst guess at what the testimony would be at the instant administrative hearing from Defendant's witnesses. Because a parent cannot compel DCPS to produce documents, I was not able to compel production of any documents that would have been supportive of the parent's position. I had no idea what documents DCPS might have that they would produce at the last minute in their "5 day disclosure". There are many other examples as to how the absence of discovery, standing alone, renders IDEA proceedings much more complex than they would be if discovery were available. IDEA cases would be much easier and straight forward to litigate if the parent had access to discovery.

24. Complexity of IDEA litigation is also reflected in the fact that I must be conversant

and knowledgeable in every discipline that touches the disabilities presented by the child at issue. In some cases this involves understanding and being able to cross-examine the DCPS psychologist on the nuances of cognitive, academic, behavioral, and emotional testing. It requires an understanding of the underlying medical and psychiatric issues and how these issues affect the child. At the same time the child may also present with additional issues such as language processing, sensory, visual/spatial impairments. To prevail at the administrative hearing, I must pull all of the above together to show clearly and unequivocally how all of the above interferes with the child's ability to access the general education curriculum. This is *very* complex and requires significant training, education and experience in order for me to competently represent the parent. Finally, DCPS has a host of speech pathologists, occupational therapists, psychologists, etc. who they bring in as witnesses, get qualified as expert witnesses and present detailed testimony concerning the child. On behalf of the parent, I am limited to presenting the expert witnesses that I can talk into participating and who will be willing to participate for no or minimal compensation. This is a significant factor in rendering IDEA litigation complex.

25. In the instant case, D.C. Public Schools proposed an inappropriate IEP for Plaintiff's child that could not meet his needs. Due to the child's complex needs and knowledge of the IEP/program proposed by Defendant, Plaintiff and undersigned counsel knew that the proposed IEP could not meet the child's needs. However, D.C. Public Schools stuck to their original placement proposal and would not compromise. This case involved much research, strategy, and preparation in order to prevail.

In accordance with 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2018.

*/s/ Elizabeth T. Jester, Esq.*
Elizabeth T. Jester, Esq.

signed electronically