THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Ms. Victoria Dobbins on behalf of A.D. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16-cv-01789 (KJB-DAR) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| One Judiciary Square ) | |
| 441 Fourth Street NW ) | |
| Washington, DC 20001, ) | |
| ) | |
| Defendant. ) | |

## VERIFIED STATEMENT OF ATTORNEY ALANA HECHT

### ALANA HECHT & D.C. DISABILITY LAW GROUP

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. I am the sole attorney and an owner of D.C. Disability Law Group, P.C., ("DCDLG") the law firm that has served as counsel for the Plaintiff in the administrative and federal court proceedings in this matter.

3. The times and expenses itemized in the invoice which is attached to the *Plaintiff's Motion for Summary Judgment* accurately represent the times spent and expenses incurred by D.C. Disability Law Group, P.C. in preparing and building the case, later litigated by the law firm of Elizabeth Jester, on behalf of the parent of A.D. Those items were contemporaneously recorded.

4. I personally reviewed and edited all the itemizations.

PLAINTIFF'S EXHIBIT 12

Verified Statement of Attorney Hecht
Page 1

5. In recording times, D.C. Disability Law Group, P.C. does not record times for tasks taking less than several minutes each and does not record times for administrative tasks, even when those tasks are case-specific.

6. D.C. Disability Law Group charges 15 cents per copy when it charges for copies that are made during the litigation process. Often times, the firm does not record expenses for copies in order to maintain conservative billing practices.

7. D.C. Disability Law Group sometimes charges for parking expenses when they are incurred by the attorney, her paralegal, or the client in connection with attending a due process hearing. In the case of A.D., no such expenses were incurred or charged for.

8. D.C. Disability Law Group uses the United States Post Office for mailing, and mails letters using regular stamps. Up through January 26, 2014, those stamps were billed out at the rate of 46 cents. Since January 27, 2014, stamps have raised in price to 49 cents a stamp, and have been billed out at that increased rate. Charges for 46 or 49 cents on the invoice in this matter reflect charges for letters sent to the parent or DCPS on behalf of the student during the litigation of this case.

9. DCDLG does not charge for travel time in order to maintain conservative billing practices.

10. There are some items it in the itemizations that are marked "non-billable." Those were entries which I determined, in my conservative judgment, should not be reasonably charged to the Defendant.

11. In reviewing and adjusting the itemizations, in addition to striking items or marking them "non-billable" or "no charge," I also wholly deleted several entries from the

original, contemporaneous time records because I deemed it unreasonable to identify them as reasonable charges attached to this litigation.

12. D.C. Disability Law Group, P.C. currently matches its hourly rates to those in what is known as the USAO adjusted *Laffey* matrix and has had several paying clients that have paid these rates. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save our Cumberland Mountains v. Hodel*, 857 F. 2d 1516, 1525 (D.C. Cir. 1988)(en banc) and other cases such as *Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482, 485 n. 2 (D.D.C. 1997); *Park v. Howard University*, 881 F. Supp. 653, 642 (D.D.C. 1995). This *Laffey* matrix is available from multiple sources, and is reproduced in Exhibit 4 to the *Plaintiff's Motion for Summary Judgment*.

13. D.C. Disability Law Group mostly serves indigent clients that cannot afford to pay even nominal attorneys' fees. Those clients sign retainer agreements that do not require them to pay fees upfront but do advise them that the firm will be seeking full *Laffey* Matrix rates on the client's behalf and that the client is prohibited from agreeing to lower or unreasonable attorneys' fees rates if the client wishes the attorney to litigate a case under the IDEA on his or her behalf.

14. Ms. Dobbins was a non-paying client of D.C. Disability Law Group as is described in ¶ 13 above.

15. My *Laffey* Matrix rate is also in line with the rates of others in the District of Columbia market that provide representation to parents under the Individuals with Disabilities Education Act.

16. D.C. Disability Law Group, P.C. has billed DCPS for IDEA attorney's fees in numerous cases since the firm's inception in August of 2012. Those bills always looked substantially like the itemizations attached to the *Plaintiff's Motion for Summary Judgment*, with hourly rates perfectly matching the adjusted *Laffey* matrix described above.

17. The expenses in the itemizations are the charges customarily paid in this field in this jurisdiction.

18. 100% of the practice of D.C. Disability Law Group, P.C. is in the field of special education law, representing parents in the District of Columbia. D.C. Disability Law Group currently has more than 100 clients.

19. Since the firm's inception in August of 2012, almost four years ago, D.C. Disability Law Group, P.C. has won private school placement – the most substantive relief obtainable in IDEA cases – in approximately 40 cases.

20. D.C. Disability Law Group is known to employ experts in the field of special education law in the District of Columbia. I, in particular, am recognized as an expert special education litigator in the D.C. area. I receive informal referrals from the Superior Court, private schools, DC Public School employees that believe their own students are not receiving appropriate services, and from clients who have had successful outcomes in their cases. I also receive referrals from agencies such as the Children's Law Center, the Juvenile Justice Clinic at the Georgetown Law Center, and Advocates for Justice in

Education, in addition to Probation Officers working with the D.C. Superior Court and other outside social service agencies.

21. I am active in the community of "parent's attorneys" in the District of Columbia. Aside from my contributions to semi-public discussions among members of the special education bar, I often advise other parent attorneys, including ones that have been practicing in the field for many years. I answer questions from fellow attorneys seeking advice regarding special education litigation at least once a week. In fact, as of mid-September, 2015, I am a co-chair of the Special Education Attorney Roundtable (SEAR).

22. In the past, I have been asked to train attorneys entering the field by the former director of the University of the District of Columbia's Special Education Law Clinic, Professor Joe Tullman. Additionally, although I am not on the panel for special education attorneys, I have been asked by several Judges in the Superior Court to take IDEA cases for children involved in delinquency and family court proceedings when those Judges are unable to appoint attorneys in those matters.

23. I am not a member of any panel within the District of Columbia Courts, any other state court, any District Court, or any other court in any jurisdiction. This includes the CCAN panel and the CJA panel. I have never attempted to join these court panels.

24. I was not appointed by any Court or entity to represent anyone in the underlying case litigated on behalf Plaintiff and the minor child A.D. I am not eligible to be appointed as a special education attorney in any case, as I am not a member of any panel, including any CCAN or CJA panel.

25. I attended Law School at the George Washington University School of Law, and received my *juris doctorate* in May of 2005. During my tenure at GW Law School, I interned at

several public interest agencies including Bread for the City and the Legal Aid Society of Washington, D.C.

26. I was first barred in the District of Columbia in December of 2005 after successfully passing the District of Columbia Bar. The following year, I took and passed the Florida Bar, and was sworn into that bar in 2006.

27. I am currently a 11th year attorney according to the *Laffey* Matrix and related case law. I graduated from law school in May of 2005, which means that I was a 7th year attorney in June 2012, first entered the "8 to 10" year bracket of experience in June of 2013, and entered my 9th year of practice in June 2014, and my 10th year of practice in June 2015, and moved into my 11th year of practice in June of 2016.

28. I have been the sole attorney and an owner at the D.C. Disability Law Group since its inception in August of 2012. In addition to myself, from August/ September of 2012 through the middle of February, 2015, I employed one full-time paralegal, Chithalina Khanchalern. The firm also employs an educational advocate, Dr. Ida Jean Holman, who has been with the firm since its inception in August of 2012.

29. The firm does not charge for the time expended working on cases by Dr. Ida Jean Holman, the educational advocate. Even when Dr. Holman completes tasks that can be considered "paralegal" tasks, the firm does not charge for her time, even when it is directly related to litigation in a specific case. To the extent that any time recorded by Dr. Holman on an invoice, this time is marked "non-billable."

30. Prior to staring the D.C. Disability Law Group, I was employed for more than two years at Brown & Associates, the largest special education law firm in the District of Columbia

dedicating 100% of its practice to litigating cases under the Individuals with Disabilities Education Act in the District of Columbia.

31. At Brown & Associates, I was litigated approximately 120 to 150 cases, with the parent being the "prevailing party" in at least 80% of those cases. Of those cases in which the parent was the "prevailing party," I won tuition to private school placements in full-time special education schools in many of those cases. In my conservative estimate, during my time at Brown & Associates, I won private school placement – the most substantive relief obtainable in IDEA cases – in more than 40 cases.

32. Moreover, during my second year employed at Brown & Associates, I was responsible for training and supervising several new attorneys hired by the firm.

33. The failure of DCPS to timely pay attorneys' fees affected Brown & Associates significantly, such that the law firm had to lay off two thirds of its staff.

34. While I was not one of the attorneys laid off from Brown & Associates, I left the firm shortly after the firm's lay-offs, as the firm indicated at the time that it did not know if it would be able to continue paying its employees given DCPS's refusal to pay the firm.

35. Upon leaving Brown & Associates I started D.C. Disability Law Group so that I could continue to provide special education litigation services to the indigent population in the District.

36. If I cannot get *Laffey* rates in a timely manner for the legal work I perform, I may not be able to continue serving the indigent population on a contingency basis. My firm has already been significantly affected by DCPS's delay in paying reasonable attorneys' fees in IDEA matters.

37. As of mid-February 2015, the firm was no longer able to employ Chithalina Khanchalern full-time as a paralegal due to the practices of DCPS in refusing to pay reasonable attorneys' fees without protracted litigation in the District Court. This required me to bill my attorney rates for work that could have been performed at a lower rate by a paralegal. DCDLG advised DCPS of the danger of this happening in numerous fee cases before this Honorable Court, however, DCPS has continued to refuse to attempt fair and reasonable settlements of pending District Court matters, requiring the firm to pursue litigation in this forum and unnecessarily clog this Court's calendar.

38. Even with the costs cut by no longer employing Ms. Khanchalern full-time, any delay in resolving fee cases pending before this Court may result in my firm being unable to continue representation of non-paying clients.

39. Prior to being employed at Brown & Associates, I was employed at Swick & Shapiro, a civil rights firm that specializes in filing Title VII of the Civil Rights Act of 1964.

40. During my time at Swick & Shapiro, I was admitted to practice in the United States District Court for the District of Columbia and the United States Court of Appeals for the D.C. Circuit, and my name appeared on several cases filed in those courts. I appeared before District Court judges as a regular course of business at Swick & Shapiro.

41. Previous to working at Swick & Shapiro, I litigated more than a hundred cases, over a two year period of time, in every branch of the D.C. Superior Court system as part of her job as an associate at Neighborhood Legal Services Program, a non-profit organization funded by the Legal Services Corporation representing indigent residents of the District of Columbia. At NLSP, I was a general practitioner, representing clients in divorce

proceedings, child custody proceedings, at Landlord-Tenant Court, in Small Claims Court, and in the general Civil Branch of the D.C. Superior Court.

42. During my time at NSLP, I quickly gained a reputation as a competent attorney and an advocate for under-served individuals, and was asked to train new employees at the organization, appearing with them in court and reviewing their Complaints to ensure they were appropriate for filing.

43. In addition to being barred in both the District of Columbia and the state of Florida, I have completed training at the National Institute for Trial Advocacy, which was a professional skills program at Georgetown University's School of Law.

44. I have been awarded full *Laffey* Matrix rates for my work in litigating IDEA cases in the District of Columbia previously by this Court. In fact, in *Young v. District of Columbia*, Civil Action No. 11-1041 (ABJ), the Honorable Judge Amy Berman Jackson over-ruled The Honorable Magistrate Judge Facciola's Report & Recommendation. Magistrate Judge Facciola had recommended that the work I did in litigating a favorable case under the Individuals with Disabilities Education Act should be paid at a rate 25% less than the full *Laffey* Matrix Rate due to what he viewed as the lack of complexity of the administrative case. Judge Jackson disagreed with Magistrate Judge Facciola and awarded an attorney fee rate of 100% of the *Laffey* Matrix rate for my work in the administrative action on behalf of the student in that case. Recently, in a R&R issued by the Honorable Magistrate Judge Deborah A. Robinson, it was recommended that I be paid at the rate of 100% of *Laffey* for the work done in that case. *Duncan v. District of Columbia*, 1:13-cv-01062-RWR-DAR. That decision was adopted by Judge Richard Roberts on August 28, 2014. Additionally, the Honorable Judge Beryl Howell sustained

(in part) an objection made by Plaintiff in *Robinson v. District of Columbia.* Judge Howell ruled that despite Magistrate Judge Kay's ruling that Plaintiff should receive attorneys' fees at a level equivalent to 75% of the *Laffey* Matrix rate, Judge Kay's analysis regarding attorneys' fees was flawed, and in fact, Plaintiff was entitled to a rate of 100% of the *Laffey* Matrix Rate for both myself and former-Paralegal Khanchalern. *Robinson v. District of Columbia*, 1:13-cv-1006 (BAH). That decision was issued on July 28, 2014.

45. Due to the lack of discovery in IDEA administrative proceedings and due to the nature of IDEA work including putting on a full trial with witnesses that are in the total control and employ of the Respondent makes IDEA litigation more complex than any of the former work done by Ms. Hecht in her career, including litigation at the District Court level in Employment Discrimination/ Title VII matters, which relied solely on motions and other pleadings and which provided Plaintiff with fair and easy access to documents and witnesses through discovery.

46. IDEA litigation involves the presentation of entire bench trial, including the admission of exhibits, direct and cross examination of witnesses, opening and closing statements/ arguments, and a robust motions practice. Planning for such a trial without discovery and cross-examining witnesses that have daily interaction with the students at the heart of the lawsuits is extremely difficult, especially since the Respondent creates and maintains all school records and have more firsthand knowledge of what is going on in the school building.

47. Indeed, IDEA administrative litigation requires expertise that can only be gained by experience in the field and a wide knowledge and grasp of not only law, but many disciplines related to special education, including education, psychology, speech and

language pathology, assistive technology, occupational therapy, mental health diagnoses and treatments/ interventions, and a whole host of other related disciplines.

### FORMER PARALEGAL CHITHALINA KHANCHALERN

48. Paralegal Chithalina Khanchalern graduated University of California at Berkeley with a Bachelor's Degree in Ethnic Studies in 2007.

49. Following her graduation from undergraduate school, Ms. Khanchalern was hired as a case clerk at a large law firm in San Francisco, where she was the clerk for one of the senior partners of the firm. At that job, she performed duties similar to those of a paralegal, including but not limited to: drafting memorandum, organizing and managing records, handling phone calls, drafting and sending correspondence on the partner's behalf, managing the attorney's calendar, and other such duties as required.

50. Ms. Khanchalern went on to get her Master's Degree in Special Education from the George Washington University School of Education in 2010. She then went on to teach two years as a special education teacher for D.C. Public Schools ("DCPS").

51. Following her resignation as a teacher with DCPS, Ms. Khanchalern was hired at another law firm, this time one that specialized in special education litigation, James E. Brown & Associates. At Brown & Associates, Ms. Khanchalern pulled from her experience as a legal clerk to assist the attorney to which she was assigned with paralegal-type tasks including, but not limited to: drafting letters and memorandum, conducting factual research on case-related issues, assisting the attorney in devising case strategy, managing the attorney's calendar, and maintaining and organizing client records and court filings.

52. Paralegal Chithalina Khanchalern's previous work at two law firms, in addition to her degree in Special Education and her teaching experience with D.C. Public Schools gives her particularly relevant knowledge and expertise about the work being done by Attorney Hecht and the D.C. Disability Law Group, P.C. It was on that basis, and because this individual has sufficient training, education, and experience in the field that Ms. Khanchalern was hired as the sole paralegal for the D.C. Disability Law Group, P.C. in August of 2012.

53. During paralegal Chithalina Khanchalern's employment with the firm, her contract established that she was hired as a paralegal, and only a paralegal, at D.C. Disability Law Group. All of the job duties listed in Ms. Khanchalern's employment contract were those of a paralegal.

54. Paralegal Chithalina Khanchalern received a substantial amount of on-the-job training as a paralegal during her time at DCDLG and worked under the direct supervision of Attorney Hecht at all times. Each task completed by Paralegal Khanchalern was specifically requested by Attorney Hecht, who reviewed all correspondence and other legal documents completed by Paralegal Khanchalern.

55. The work that was done by Paralegal Khanchalern during all times relevant to the case litigated on behalf of the Plaintiff, was substantive legal work that, if not done by Ms. Khanchalern, would have had to be completed by Attorney Hecht at a higher billing rate.

56. At all times relevant to the current litigation, Ms. Khanchalern was employed full-time with D.C. Disability Law Group. At all times relevant to the current litigation, Ms.

Khanchalern's time was billed at the *Laffey* matrix rate set for paralegals, which was $145.00 per hour.

57. The sole position for which Ms. Khanchalern was hired at DCDLG was paralegal. Ms. Khanchalern did not provide educational consulting services to DCDLG, and cannot and did not provide expert testimony. All of the job duties completed by Ms. Khanchalern were substantive legal tasks supervised by Attorney Hecht.

58. In a recent case litigated in front of this court, after lengthy briefing and over the strong objections of the District, Magistrate Judge Kay ruled that Ms. Khanchalern should properly be considered a paralegal for the purposes of determining legal fees under IDEA cases. *Hines v. District of Columbia*, Civil Action No. 1:13-cv-00560-JEB-AK. Paralegal Khanchalern was also recognized as the firm's paralegal for billing purposes in a second case titled *Hines v. District of Columbia*, Civil Case No. 1:13-cv-00695-JDB-AK. In the recent R&R issued on June 17, 2014 by Deborah A. Robinson in *Duncan v. District of Columbia*, 1:13-cv-01062-RWR-DAR, Ms. Khanchalern was not only viewed as a paralegal, but was awarded full *Laffey* Matrix rates for paralegals, although some of her entries were cut. .

59. For example, in *Hines v. District of Columbia*, Magistrate Judge Kay determined that the work that Ms. Khanchalern does qualifies her as a paralegal for the purposes of legal fee calculations under IDEA, but reduced her rate to 75% of *Laffey* (along with a reduction of the attorney's rate to 75% of the *Laffey* Matrix rate) because of his determination that the case was not "complex" enough to warrant full *Laffey* Matrix rates for either the attorney or the paralegal. .

60. The Court made this same determination in a second *Hines v. District of Columbia* case, Case No. 1:13-cv-00695-JDB-AK, relying on the same analysis as in the previous *Hines* case.

61. Since that time, several other decisions have been issued and each time DCPS's arguments that Ms. Khanchalern should not be paid for her work at the *Laffey* Matrix rate or a percentage of that rate has been knocked down. In fact, in a very recent decision issued by The Honorable Magistrate Judge Deborah A. Robinson, this Court also concluded that the Chithalina Khanchalern should be paid at the *Laffey* Matrix rate, although she awarded her 100% of that Rate in a recent a R&R. *Duncan v. District of Columbia*, 1:13-cv-01062-RWR-DAR. That decision was adopted by Judge Richard Roberts on August 28, 2014.

62. Additionally, the Honorable Judge Beryl Howell ruled on her decision in *Robinson v. D.C.* that Plaintiff was entitled to a rate of 100% of the *Laffey* Matrix Rate for both Attorney Hecht and Paralegal Khanchalern. *Robinson v. District of Columbia*, 1:13-cv-1006 (BAH). That decision was issued on July 28, 2014.

**CASE FILED ON BEHALF OF THE PLAINTIFF**

63. The student is a child with a disability pursuant to IDEA with a disability classification of Emotional Disturbance.

64. While the law firm of Elizabeth Jester litigated the case on behalf of A.D., the parent was first retained by D.C. Disability Law Group.

65. DCDLG represented the parent from November 2013 through June of 2014, during which time the firm built a case for litigation of a due process complaint.

66. While DCDLG did not litigate the case at the Student Hearing Office or Office of Dispute Resolution, the work done by DCDLG were the initial building blocks upon which Ms. Jester built in order to successfully litigate the case and become the prevailing party.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: December 13, 2016

_____
Alana M. Hecht, Esq.