**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————

**ANISSA JONES**                                 :
                                                 :
              **Plaintiff,**                     :
                                                 :          **Civ. Action No. 15-1505(BAH/GMH)**
       **v.**                                    :
                                                 :
**DISTRICT OF COLUMBIA,**                        :
                                                 :
              **Defendant.**                     :

———————————————————

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR FEES AND COSTS**

<u>INTRODUCTION</u>

Defendant District of Columbia (the District) opposes Plaintiff's Motion for Fees and Costs (Pl.'s Motion for Attorney Fees [51]; Supplement Motion for Attorney Fees [52]), pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415(i)(3)(B) in the above captioned action. Plaintiff seeks $86,934.57 for 166.33 hours of work and $804.36 in costs incurred in litigating the underlying administrative proceedings. *See* Pl's Mot. Exhibit 3 at 20 [51-5]. The parties already settled some of the attorney's fees related to this case. Notice of Settlement [40].

The main dispute between the parties is familiar. The District believes, based on empirical evidence from settlements and Court orders in the vast majority of attorney's fees petitions brought under the IDEA, that the reasonable market rate for attorney's practicing special education law under the IDEA is 75% of the USAO Attorney's fees matrix rate and that the market rate for attorney's fees related to fees on fees is 50% of the USAO Attorney's fees matrix. Plaintiffs' attorney wants more.

This case also presents unique facts that counsel against fully compensating Plaintiff's counsel: (1) the District offered everything Plaintiff asked for in settlement, but was rebuffed; (2) Plaintiff achieved a less-than-stellar award which she has not been able to use (and, apparently, now has no interest in using).

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anissa Jones brings this case on behalf of D.M., her child. She began this dispute by filing a due process complaint in 2015 before, ultimately, filing this lawsuit. Rep. and Rec. at 9-10 [30]. Plaintiff raised six issues at the due process hearing: (1) she challenged D.M.'s March 2014 IEP as inappropriate and as not being implemented; (2) she challenged the District's evaluation of D.M.; (3) she challenged the District's failure to fund an IEE; (4) she challenged the District's failure to immediately convene a new IEP meeting upon receiving an evaluation from her; (5) she challenged the January 2015 IEP as inappropaite and as not being implemented; and (6) she challenged the District's failure to provide a dedicated aide. *Id.* As a remedy, Plaintiff sought placement at a private school, a stricter-placement in his IEP, additional speech and language services, a dedicated aide, five different assessements, and a new IEP based on the information obtained from the assessments. *Id.* at 10. The hearing officer awarded her one of the assessments she requested and found that D.M. should be educated in a more restrictive placement. *Id.* at 11-12.

After nearly three years of litigation in the District Court, Plaintiff's attorney received $80,000.00 in a fees settlement, but Plaintiff has received nothing more. There is a Court order that, at the Plaintiff's request, the District is to fund a comprehensive indepdent reevaluation at public expense, but because of intervening events beginning in January 2017 Plaintiff has been unable to make use of the right awarded by the Court.

On February 19, 2016, the District offered in settlement essentially everything that the Plaintiff requested – independent evaluations with the exception of an FBA being conducted by the school D.M. was attending – but, the District needed a fees invoice to support a settlement including attorney's fees. Ex. 1.  Plaintiff refused to settle this case, dragging out the dispute for the next three years and racking up a substantial bill for attorney's fees.  Plaintiff finally provided her fee invoices in 2017, when she began seeking attorney's fees through the Court, and in March 2018.

<u>STANDARD OF REVIEW</u>

There is no entitlement to attorney's fees under the IDEA; rather, the Court "in its discretion, may award reasonable attorneys' fees as part of the costs" to a prevailing party.  20 U.S.C. §1415(i)(3)(B).  Fees that are awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §1415(i)(3)(C).  The court may reduce the amount of attorney's fees when it finds that the legal services furnished were excessive considering the nature of the action or proceeding.  20 U.S.C. § 1415(i)(3)(F).  No bonus or multiplier may be used in calculating the fees awarded under the IDEA.  20 U.S.C. § 1415(i)(3)(C).

The court must determine whether the attorney's fees sought are reasonable.  20 U.S.C. §1415(i)(3)(B).  A starting point for determining the amount of reasonable fees is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Hensley v Eckerhart*, 461 U.S. 424, 433 (1983).  The plaintiff bears the burden of establishing all elements of requested fees.  *See Blum v. Stenson*, 465 U.S. 886, 898 (1984) ("The issue remaining is the appropriateness of an upward adjustment to the fee award in this case. The burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant. The record before us contains no evidence supporting an upward adjustment to fees

calculated under the basic standard of reasonable rates times reasonable hours."); *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015) (In addition, the "fee applicant bears the burden of establishing entitlement to an award…").

Importantly, Plaintiff's burden necessarily includes the burden of demonstrating that the number of hours spent on a particular task is "reasonable."   *See Salazar*, 809 F.3d at 61 (noting that as part of showing entitlement to fee award the fee applicant has the burden of …. "documenting the appropriate hours, and justifying the reasonableness of the rates," with the opposing party remaining "free to rebut [the] fee claim." (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995), *cert. denied,* 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 847 (1996)); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) ("An applicant for attorneys' fees is only entitled to an award for time reasonably expended. Thus, the fee application must also contain sufficiently detailed information about the hours logged and the work done. This is essential not only to permit the District Court to make an accurate and equitable award but to place government counsel in a position to make an informed determination as to the merits of the application."); *Tillman v. District of Columbia*, 123 F. Supp. 3d 49, 55 (D.D.C. 2015) ("The party seeking fees has 'the burden of demonstrating that the number of hours expended on particular tasks was reasonable.'" (quoting *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004)); *Baker v. D.C. Pub. Sch.*, 815 F. Supp. 2d 102, 107 (D.D.C. 2011) (same)).

The plaintiff may satisfy this burden by submitting an invoice with sufficient detail so that the Court can determine "*with a high degree of certainty"* that the hours were actually and reasonably expended, that the hourly rate charged was reasonable in view of the attorney's reputation and level of skill and experience with respect to this type of case, and that the matter

was appropriately staffed to do the work required efficiently and without duplicative billing.

*Rooths v District of Columbia*, 802 F. Supp. 56 (D.D.C. 2011) (quoting *In re Olson*, 884 F.2d

1415, 1428-29 (D.C. Cir. 1989)).  In other words, an "application must be sufficiently detailed to

permit the District Court to make an independent determination whether or not the hours claimed

are justified."  *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327; *see also Tillman*, 123 F.

Supp. 3d at 55-56; *Holbrook*, 305 F. Supp. 2d at 45.

As the Supreme Court pointed out in *Hensley*, cases may be overstaffed, and the skill and

experience of lawyers vary widely.  *Hensley*, 461 U.S 434.   For these reasons, "[c]ounsel for

the prevailing party should therefore make a good faith effort to exclude from a fee request hours

that are excessive, redundant, or otherwise unnecessary, just as lawyers in private practice are

ethically obligated to exclude such hours from his fee submission."  *Id*. at 434.

Furthermore, any activity that an attorney may bill a private client is not necessarily

reasonably billed pursuant to a fee-shifting statute.  "In the private sector, 'billing judgment' is

an important component in fee setting.  It is no less important here.  Hours that are not properly

billed to one's client also are not properly billed to one's adversary pursuant to statutory

authority."  *Hensley*, 461 U.S. at 434 (quoting *Copeland v Marshall*, 205 U.S. App. D.C. 390,

401; 641 F.2d 880, 891 (1980)(*en banc*)(emphasis in original).

<u>ARGUMENT</u>

## I.    THE APPROPRIATE HOURLY RATE IS THREE QUARTERS OF THE USAO ATTORNEY'S FEES MATRIX.

Plaintiffs's attorneys' proposed hourly rates exceed the market rate for IDEA litigation,

which is 75% of the USAO Attorney's Fees Matrix.  As stated earlier, Plaintiffs bear the ultimate

burden of proving entitlement to the fees they seek, including importantly, the reasonableness of

their requested hourly rates.  *See Salazar* 809 F.3d at 64 ("The district court appropriately

required the plaintiffs to demonstrate the propriety of the rates they sought…").  The IDEA requires that any award of attorney's fees to a prevailing plaintiff be "based on the rates prevailing in the community … for the kind and quality of services furnished," 20 U.S.C. § 1415(i)(3)(C), and must be reduced if the hourly rate requested "unreasonably exceeds" the rate for "similar services [provided] by attorneys of reasonably comparable skill, reputation, and experience,"  20 U.S.C. § 1415(i)(3)(F)(ii); *see also Eley v. District of Columbia*, 793 F.3d 97, 99-100 (D.C. Cir. 2015).

Significantly, the Circuit has recently determined that legal services for IDEA litigation form a "submarket in which attorneys' hourly fees are generally lower than the rates in either of the *Laffey* matrices."  *Salazar*, 809 F.3d at 64 (discussing *Eley, supra*);  *see also  Snead v. Dist. of Columbia*, 139 F. Supp. 3d 375, 379 (D.D.C. 2015) ("since *Eley*, however, courts in this jurisdiction have interpreted the decision as strongly suggesting that IDEA matters are infrequently comparable to complex federal litigation, and therefore, full *Laffey* rates should not be awarded in such cases" (and citations therein).

Accordingly, a party seeking to recover attorney's fees at the *Laffey* or USAO rates must prove that rates she seeks are the "rates customarily charged by IDEA practitioners in the District," comparable to those provided under the *Laffey* or the USAO Matrix, or that the administrative proceedings qualified as "complex federal litigation."  *Flood v. District of Columbia,* 172 F. Supp. 3d 197 (D.D.C. 2016); *see also Joaquin v. District of Columbia*, 2016 U.S. Dist. LEXIS 134753 at *6-7 (D.D.C. Sept. 28, 2016) (Lamberth, J.) ("applicant may demonstrate [either] that IDEA proceedings qualify as complex federal litigation … [or] that rates customarily charged by IDEA practitioners in the District are comparable [to those sought]").

The chief dispute in this case arises from the reasonableness of 75% of the USAO Attorney's Fees Matrix. Plaintiffs argue that their counsel should be paid at the hourly rate set out in the USAO Matrix because some courts have awarded similar rates, Pls.' Mot. at 8-9 [7], because other attorneys performing different work are paid at those rates, Pls.' Mot. at 9-10, 12, and because some other IDEA attorney's claim to charge those rates, Pls.' Mot. at 11-12.    In support of the argument that her hourly rate reflects the prevailing market rate for IDEA litigation, Plaintiff relies on three declarations from attorneys who practice special education law, the USAO Matrix and a survey of attorneys who practice IDEA litigation.    The Court may soundly reject Plaintiff's arguments and hold (consistent with the vast majority of jurist of this Court), that the appropriate rate of reimbursement is three fourths of the USAO Matrix.

A. Plaintiff's Declarations do not establish the "prevailing rate" in the District for attorneys performing IDEA litigation.

Plaintiff directs the Court to exhibits 8-12 as evidence of the prevailing market rate. Pl's Mot. at 6 [30]. Exhibits 8-12 contain declarations from Carolyn Houck, Elizabeth Jester, Alana Hecht, Nicholas Ostrem, Stevie Nabors and Douglas Tyrka;, however, these declarations fall far short of establishing the prevailing market rate for IDEA litigation in the District.

The declarations, taken together, merely show a small subset of six attorneys practicing IDEA administrative proceedings "charge" the USAO Matrix rate, not because those rates are supported by the market, but only because the USAO Matrix or the Laffey Matrix exists, and this is hardly definitive proof of the "prevailing market rate." *See Cox v. District of Columbia,* 264 F. Supp. 3d 131, 141 (D.D.C. 2017) ("Instead, most of the attorneys focus on the fees they charged. For that reason, most of the affidavits do not help the Court determine whether the Laffey Matrix rates that Plaintiffs request "are in line with those prevailing in the community." (citations omitted)); *Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1, 17–18 (D.D.C.

2016), *appeal dismissed*, No. 16-7084, 2017 WL 2332623 (D.C. Cir. Feb. 22, 2017)("To be sure, two of Ms. Joaquin's affidavits do assert that the declarant-attorneys have been paid at LSI Laffey Matrix rates… But those affidavits do not specify, out of the hundreds of IDEA cases that the two attorneys handle, how many of the lawyers' clients pay the LSI Laffey Matrix rates… As a result, the Court cannot determine whether the LSI Laffey Matrix rates are the lawyers' standard rates, or whether they receive payment at those rates from outlier clients only. As a whole, Ms. Joaquin's affidavits do not substantiate her argument that "IDEA lawyers earn [LSI Laffey Matrix] rates on the market.").

Moreover, these statements do not support the USAO Matrix rate as "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," 20 U.S.C. § 1415, because the Affiants/Declarants did not offer justifiable reasons, or any reason at all in most cases, why they charged the selected USAO or Laffey rate, and there is little showing that the attorneys actually *received* the rates charged, except, of course on the comparatively rare occasion when the District Court awards these unreasonable rates. *See also Cox,* 264 F. Supp. 3d at 141 ("Three out of four affidavits that Plaintiffs provided thus do not help the Court in determining the prevailing community rate for IDEA litigation, because they lack any indication of the "precise fees" that the practitioners have "received.") (internal citations omitted); *Joaquin*, 188 F. Supp. 3d at 17 ("But these affidavits do not 'recit[e] the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases.'"); *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 85 (D.D.C. 2016) ("The primary basis for the Court's conclusion is that the majority of the practitioners failed to demonstrate that the full USAO Laffey Matrix rates are "the prevailing community rate[s] for IDEA litigation, because they lack any recitation of the 'precise fees' that they have [actually] 'received.'"); *Eley*

*v. District of Columbia.*, 201 F. Supp. 3d 150, 161 (D.D.C. 2016) ("Notably, however, only one of these attorneys appears to have collected fees at these billed rates. Moran Decl. ¶¶ 11–12 (stating that Salazar/LSI rates 'are regularly paid by clients who retain [the attorney's] firm to litigate cases on a non-contingency basis'). By contrast, the plaintiff's own attorney explains that he charged rates 'perfectly matching' those provided by the Salazar/LSI Matrix but only during a period when federal law capped IDEA fee awards in the District at $4,000.")

Here, the Verified Statement of Douglas Tyrka (Tyrka Declaration), declares that Tyrka and Associates has always set its hourly rate equal to the rate found in the LSI Matrix [51-11 at ¶ 8]. Although the Tyrka Declaration claims that "several" clients have paid the firm at the LSI Matrix rates [*Id.* at ¶ 9], payment by "several" clients is insufficient evidence that that rate is the prevailing market rate. Indeed, considering the vast number of clients Mr. Tyrka has counseled over the years, those "several" clients appear to be an outlier rather than the norm. Moreover, the Court should discredit Mr. Tyrka's declaration. Dr. Laura Malowane prepared an declaration regarding attorney's fees in the District of Columbia, which is attached to Plaintiffs' motion for attorney's fees as exhibit 17, and which concludes that Mr. Tyrka's fees requests were all so unreasonable that she excluded them from her statistical analysis. Pls.' Mot. Ex. 17 at 27.

Nicholas Ostrem's declaration alleges that in the absence of being paid *Salazar* rates, which the Circuit Court has ruled inapplicable to IDEA litigation, *Eley v. District of Columbia*, 793 F.3d 97, 99-100 (D.C. Cir. 2015), he could not maintain his practice of law on a contingency fee basis because his unwillingness to settle at the market rate – 75% of the USAO rate – delayed payments of attorney's fees. Pls.' Mot. Ex 10 51-12.

The remaining declarations suffer from similar flaws – clients do not ordinarily pay the rates sought. *Eley*, 793 F.3d at 101 (identifying "affidavits reciting the precise fees that attorneys

with similar qualifications have received from fee-paying clients in comparable cases . . ." as evidence of a market hourly rate)  Ms. Houck's declaration only states that she "charges" a rate "in line" with the USAO rate; it says nothing of the rate actually received.  Pls.' Mot. Ex. 8 at 1-2 – Declaration of Carolyn Houck [51-12] ("The hourly rates I charge my clients . . .").  Ms. Jester's declaration states that she uses USAO rates and that with "very limited exceptions," her fee arrangements are all contingency-based.  Decl. of Elizabeth Jester ¶¶ 12, 20 [51-6].  Ms. Hecht's declaration states that most of her fee arrangements are contingency based.  Decl. of Alana Hecht ¶ 13 [51-14].  Mr. Nabor's declaration alleges that his firm has "been paid" USAO Matrix rates "on matters concerning education law, employment law, and labor rights"  but the declaration further specifies that only one client actually paid the USAO Matrix rates in a matter that involved IDEA claims, ADA claims, and § 504 claims.  Decl. of Stevie Nabors ¶¶ 8, 10 [51-13].  These declaration all stand for the same principle – these attorney's purport to charge full USAO rates because other attorneys do.  The real reason IDEA attorneys purport to charge full USAO rates is not because the rates are reasonable or because they are unwilling to settle for less (Ms. Houck, Ms. Jester, and Ms. Hecht have all settled fees cases with the undersigned at 75% of the USAO or Laffey rate for fees and 50% for fees on fees) – they bill these rates because they know that if they file a petition for fees in district court, there is a chance that the Court will award them that rate.

Accordingly, the Court should conclude Plaintiff's declarations are insufficient evidence to justify her contention that the USAO Matrix is comparable to rates prevailing in the community for similar services in IDEA litigation.

B.  The USAO Matrix

Before discussing whether the current USAO Matrix reflects the prevailing market rate for IDEA litigation, a history of the matrices accepted in this jurisdiction to establish an

attorney's hourly rate is in order.  The attached Statement of Interest of the United States (US

Statement) filed on April 27, 2017, in *D.L. et al., v. District of Columbia,* Civil Action No. 05-

1437 (RCL) provides that history.  *See* Defendant's Exhibit 3, Statement of Interest of the United

States (US Statement) at 2-5.

The USAO-DC developed the *Laffey* Matrix to set hourly rates for the years between June 1,

1981, and May 31, 2015.  *See* US Statement at 2.  Historically, the *Laffey* rate came about as the

result of a complex federal lawsuit.  It bears remembering that the *Laffey* rate is based on a class

action lawsuit which lasted thirteen years and involved "an extended period of pretrial discovery,

full trial on the merits, two rounds of appeals, and one *certiorari* petition."  *Laffey v. Northwest*

*Airlines,* 572 F. Supp. 354, 359 (D.D.C. 1983).  The rate schedule devised and adopted as a result of

*Laffey* was, notably, for "*experienced federal litigators." Laffey,* 572 F. Supp at 371.  The hourly

rates used in the *Laffey* Matrix were based on the prevailing market rates in the District in 1981-82,

and those rates were adjusted in later years to reflect the change in the costs of living for the

Washington, D.C. area.  *See* US Statement at 3.  The *Laffey* Matrix was called "the benchmark for

reasonable fees in this Court."  *Miller v. Holzmann,* 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008).  *See*

US Statement at 3.

The USAO Matrix, which was developed for use after June 1, 2015, is based on different

data and utilizes a different inflation index than that used in the *Laffey* Matrix.  *Id.,* at 3.  The base

hourly rates were calculated "using statistically significant samples of average hourly rates for 2011

in survey data for the D.C. metropolitan area, as reported in ALM Legal Intelligence's 2011 & 2011

Survey of Law Firm Economics."  *Id.*  Nevertheless, both the *Laffey* Matrix and the USAO Matrix

were intended to be applied in *complex federal litigation* in the District.  *Id.,* at 2; *D.L. v. District of*

*Columbia,* 256 F.R.D. 239, 243 (D.D.C. 2009) ("[T]he rates produced by the USAO Laffey Matrix are frequently awarded to attorneys engaged in complex federal litigation in this district.").

Most importantly, the vast majority of jurists in this Circuit have found that IDEA litigation *is not* in and of itself, complex litigation which automatically qualifies for application of the *Laffey* or USAO Matrix. *See e.g., Reed v. Dist. of Columiba*., 843 F.3d 517, 525 (D.C. Cir. 2016) ("In our view, the District Court did not abuse its discretion in holding that, while Appellants may have demonstrated that IDEA proceedings are complicated "in some sense," they fell short of establishing that "such matters are complex federal litigation,"… Mere conclusory statements that IDEA litigation is "as complex" as other types of cases deemed by this court to be "complex federal litigation," absent an explanation of why this is so, cannot suffice to meet Appellants' burden. (citations omitted)); *see also Lee v. Dist. of Columbia*, 298 F. Supp. 3d 4, 13 (D.D.C. 2018) (noting that the most judges in the District have found that IDEA litigation is not per se complex); *Cox v. Dist. of Coluimbia,* 264 F. Supp. 3d 131, 143 (D.D.C. 2017) ( "*Cox II*") (same); *Coates v. Dist. of Columbia*, 79 F. Supp. 3d 42, 49 (D.D.C. 2015)(same); *McAllister v. Dist. of Columbia*, 21 F. Supp. 3d 94, 108–09 (D.D.C. 2014), *aff'd*, 794 F.3d 15 (D.C. Cir. 2015)(same); *Flores v. District of Columbia*, 857 F.Supp.2d 15, 21 (D.D.C. 2012)(same); *Rooths v,. Dist. of Columbia*, 802 F.Supp.2d _56, 63 (D.D.C. 2011)(same); *Wilson v. Dist. of Columbia*, 777 F.Supp.2d 123, 127 (D.D.C.2011) (explaining that the plaintiff failed to recognize that the Laffey Matrix is not generally applicable to IDEA cases); *Agapito v. Dist. of Columbia,* 525 F.Supp.2d 150, 150 (D.D.C.2007) (declining to apply Laffey rates to relatively simple and straightforward IDEA cases); *but cf. Flood v. Dist. of Columbia,* 172 F. Supp. 3d 197, 207–08 (D.D.C. 2016)(finding that IDEA matters are sufficiently complex); *Cox* v. *Dist. of Columbia* , 754 F.Supp.2d  66, 75-76 (D.D.C.  2010)("*Cox I*")(collecting cases applying full *Laffey* fees  IDEA matters)

Plaintiffs also cite the 2013 and 2015 National Law Journal market survey. Pls.' Mot. Exhibits 6 and 7 . However, this survey has no indication of years of experience or of practice areas. *Id.* In other words, it appears to put criminal drug offenders' counsel in the same category with white collar crime or transactional attorneys. Thus, the survey does not indicate whether the rates identified are charged for similar work by similarly experienced attorneys. Moreover, the survey does not indicate whether the rates it identifies are rates charged or rates actually received. *Id.* Consequently, the National Law Journal market survey provides no evidence of the reasonable market rate here.

C.  Three-quarters of the Applicable USAO Rate is Sufficient to Attract Competent Counsel.

Plaintiff argues that the hourly rates in the USAO Matrix should be applied to attorneys practicing IDEA litigation because lower rates are insufficient to attract competent counsel. Pls.' Mot. at 11-12. In support of her argument, Plaintiff has attached declarations from Mr. Ostrem and Mr. Tyrka to her motion—Exhibit 15—which claim that potential IDEA clients were turned away because the attorney could not afford to represent them.

For example, the Ostrem Declaration asserts that the District has "refuse[ed] to negotiate fees in good faith and at a reasonable rate." *See* Ostrem Declaration at ¶ 9 [7-15]. Mr. Tyrka makes similar accusations. *See* Tyrka Declaration ¶ 7, 42. Defendant has attached statistics that belie the assertions of these declarations.

In fiscal year 2014, DCPS received a total of 303 invoices from attorneys requesting reimbursement for attorney's fees and costs. Of those 303 invoices, 241 were settled, and all of those 241 invoices were settled by applying three-fourths of the applicable *Laffey* hourly rate or less. *See* the Declaration of Floyd Hayes attached as Defendant's Exhibit 2, at ¶ 5. In fiscal year 2015, DCPS received a total of 310 invoices from attorneys requesting reimbursement for

13

attorney's fees and costs.  Of those 310 invoices, 212 were settled, and all of those 212 invoices were settled by applying three-fourths of the hourly rate of the applicable *Laffey* or USAO Matrix or less.  *Id.* at ¶ 6.  In fiscal year 2016, DCPS received a total of 234 invoices from attorneys requesting reimbursement for attorney's fees and costs.  Of those 234 invoices, 173 were settled, and all of those 173 invoices were settled by applying three-fourths of the hourly rate of the applicable USAO Matrix or less.  *Id.* at ¶ 7.

Defendant's Exhibit 2 is evidence that payment at three-fourths of the hourly rate of the applicable *Laffey* or USAO Matrix is sufficient to attract competent counsel.  Moreover, Exhibit 2 is proof that DCPS is willing to negotiate settlements in good faith, contrary to assertions in Plaintiff's declarations.  Further, the large number of invoices received and settled is evidence that three-fourths of the hourly *Laffey* or USAO Matrix is the prevailing market rate for attorneys practicing IDEA litigation.

The District, therefore, asserts that Exhibit 2 is "sufficient contrary evidence" that rebuts the "presumption of reasonableness" of Plaintiff's requested hourly rates.  *See Thomas v. D.C.*, 908 F. Supp. 2d 233, 248 (D.D.C. 2012) (citing *Covington,* 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans,* 675 F.2d at 1326).

A reasonable rate is one that produces a "fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," not "to provide a form of economic relief to improve the financial lot of attorneys." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672-73 (2010) (quotations and citations omitted).  The District has shown, through its own competent evidence, that three-quarters of the applicable *Laffey* or USAO hourly rate is appropriate for attorneys practicing IDEA litigation because it is sufficient to attract competent counsel.

14

D.  <u>The Court is not permitted to provide a multiplier to the reasonable hourly rate.</u>

Much of Plaintiff's motion proceeds under the warrant that the reasonable market rate for

IDEA attorney's fees is less than the full USAO Matrix rates.  Pls.' Mot. at 10-20.  Plaintiff

argues that the particular complexity of this case, Pl.'s Mot. at 10-13, the wage theft prevention

act, Pl.'s Mot. at 17, and the nature of contingency fee arrangements, Pl.'s Mot. at 19-20, support

an upward departure from the reasonable rate.  20 U.S.C. § 1415 (i)(3) provides the district court

with authority to award attorney's fees under the IDEA.  20 U.S.C. § 1415 (i)(3).  Section 1415

(i)(3)(C), however, explicitly states, "No bonus or multiplier may be used in calculating the fees

awarded under this subsection."  20 U.S.C. § 1415 (i)(3)(C).  Plaintiff's arguments that the

particular complexity of this case warrants an upward adjustment of the reasonable rate is,

therefore, without merit.

Similarly, the delayed payment nature of contingency fee arrangement does not support a

bonus to her lodestar.  And, more importantly, the District made an offer of settlement more than

two years ago that would have awarded everything Plaintiff ultimately obtained in this litigation.

Ex. 1.  Consequently, any delay in payment falls squarely at Plaintiff's feet and should not

function as an excuse to punish the District.

Finally, Plaintiff cites the wage theft prevention act as justification for awarding a higher

fee rate.  Pl.'s Mot. at 17.  The criminal punishments available against employers who steal from

their employees is a vastly different area of law and is, consequently, irrelevant.  *See Salazar v.*

*District of Columbia,* 809 F.3d 58, 64 (D.C. Cir. 2015) (explaining that *Eley*, 793, F.3d at 105

found IDEA fees constitute their own submarket and contrasting that submarket with the case

presented in *Salazar* which constituted complex federal litigation); *see also* D.C. Code § 32-1307

(providing "An employer who negligently failes to comply with [the wage and hour laws] shall

be guilty of a misdemeanor" and fined not more $2,500.00 for each affected employee on a first offense and not more $5,000.00 for each affected employee on any subsequent offense and that "An employer who willfully fails to comply" shall be fined not more than $5,000.00 per affected employee or imprisoned not more than 30 days for a first offense and for any subsequent offense be fined not more than $10,000.00 per affected employee or imprisoned for not more than 90 days). Furthermore, actually reading the language of the statute makes it clear that the *Salazar* rate is not believed to be the reasonable market rate. First, the bare fact that the statute specifies the *Salazar* Matrix rather than simply referring to the market rate or (as elsewhere in the statute) a reasonable fee, implies that specifying the *Salazar* Matrix was necessary; to assume otherwise renders the proviso superfluous. D.C. Code § 32-1308.01 (m)(1); *see Artis v. District of Columbia*, 138 S.Ct. 594, 604 (2018) (finding against the District's construction of a particular statutory phrase in part because the District's construction would render a portion of the text superfluous). Second, the very next paragraph of the section provides that attorney's can only receive the "market rates in effect at that time" when attempting to enforce an attorney's fees award. D.C. Code § 32-1308.01 (m)(2).

E. The majority of cases settle at or below 75% of the USAO Matrix rate.

Plaintiff argues that several cases award full USAO Matrix rates. Pl.'s Mot. at 14-17. One of these cases, *Young v. Sarles*, is not an IDEA case, and is, therefore, irrelevant. *See* Pl.'s Mot. at 14; *Young v. Sarles*, Civ. A. 14-cv-1203 (BAH) Docket at 7/16/14 (complaint alleging WMATA unlawfully interfered in the plaintiff's alleged street performances). *Sweatt v. District of Columbia*, 82 F. Supp 3d 454 (D.D.C. 2015) also awarded less than the USAO Matrix rate and applied the rate the plaintiff was actually invoiced for the attorney's time. *See* Pl.'s Mot. at 14 (citing *Sweatt*). Plaintiff also relies on *Ward v. District of Columbia*, Civ. A. No. 09-1874, but

*Ward* awarded fees at two rates for two different time periods, one was approximately 65% of the *Laffey* Matrix rate and the other was 75% of the *Laffey* Matrix rate. *Ward*, 09-1874, Dkt. at 35 p. 11-12. Similarly, *Cox I*, 754 F. Supp. 2d at 75-76 awarded fees at approximately 86% of the *Laffey* Matrix rate. *Cox I*, 754 F. Supp. 2d at 75-76. *Garvin v. District of Columbia*, 851 F. Supp. 2d 101, 107-109 (D.D.C. 2012)was closer, awarding between 86% and 95% of the *Laffey* Matrix rate. *Garvin*,910 F. Supp. 2d at 108-109.-140. Plaintiff also relies heavily on *Holbrook*, wherein her counsel was awarded 75% of the *Laffey* Matrix in 2003. *See* Pl.'s Mot. at 16 (arguing $280 was reasonable in when awarded in 2004); 2002-2003 *Laffey* Matrix (available at https://www.justice.gov/usao-dc/civil-division/laffey-matrix-1992-2003) (last visited 6/28/2018) ($370 per hour for attorney's with more than twenty years' experience).

More importantly, the small number of cases cited by Plaintiff pales in comparison to the vast number of cases finding that ¾ of the USAO or Laffey rate is the closer to the "prevailing rate" for IDEA litigation in the District. *See e.g., Lee*., 298 F. Supp. 3d at 15 (" As one judge of this District Court recently observed: "[B]ased on recent case law from this district, the 'prevailing rate' for IDEA fee awards in this community seems to be seventy-five percent of Laffey Matrix rates." (quoting *Cox II*, 264 F. Supp. 3d at 145)); *see also Platt v. District of Columbia*, 168 F. Supp. 3d 253, 267 (D.D.C. 2016)("Here, Defendant proposes an award of 75% USAO Laffey Matrix levels—and an overwhelming number of district courts have found such a rate to approximate the prevailing rate for IDEA administrative proceedings." (citations omitted))."). In other words, the probative value of the cases cited by Plaintiff for proposition that full USAO rates is appropriate is directly offset by the vast majority of cases in this district holding otherwise. *See Lee*., 298 F. Supp. 3d at 15 (and cases cited therein); *Cox II*, 264 F. Supp. 3d at 145)(and cases cited therein); *Platt*, 168 F. Supp. 3d at 267 (and cases cited therein). Even

including all of the cases cited by Plaintiff (with the exclusion of *Holbrook*) in the total, Plaintiff asks the Court to make a finding regarding the market rate for IDEA attorney's fees based off a total award of about $410,000.00 in attorneys fees awarded over the course of a decade.  But to do so, the Court must completely disregard more than twenty-five times that value (over a period one-third as long) in evidence of the amounts at which attorney's actually voluntarily settle fee claims.  Floyd Hayes Decl. ¶¶ 5-7; Mr. Hayes Decl. at attachment (summarizing roughly $11 million in attorney's fees settlments over 3 years).  Moreover, whereas Plaintiff points to eleven, cherry-picked cases (a good number of which support the award of 75% rates), the District has provided evidence of more than 600 cases that settled at or less than 75% of the *Laffey* or USAO Matrix rates.  Consequently, there is no factual basis to award more than 75% of the USAO Matrix rate.

## II.   THE RESULT OBTAINED AND EARLIER ATTEMPTS BY THE DISTRICT TO SETTLE THIS MATTER PRECLUDE THE AWARD OF ADDITIONAL FEES.

The results obtained in this lawsuit warrant denying Plaintiff's motion for attorney's fees. Courts in this District reduce awards of attorney's fees under the IDEA based on partial success at hearing.  *See A.S. v. D.C.*, 842 F. Supp. 2d 40 (D.D.C. 2012) (reducing fee award by 50% because plaintiffs were only awarded half of the tuition award they sought); *B.R. v. D.C.*, 802 F. Supp. 2d 153 (D.D.C. 2011) (reducing fee award by 50% because plaintiffs brought an unnecessary claim that made up a large proportion of the legal action); *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 121-123 (D.D.C. 2010) (reducing fee award where plaintiff did not receive all of the requested relief.)

When calculating such a reduction, the Court has discretion.  "[T]here is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited

success." *Hensley,* 461 U.S. at 436-37.  "The most critical factor is the degree of success obtained." *Id.* at 436.  A reasonable rate times the number of hours worked "may be an excessive amount . . ." ". . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.*

Here, Plaintiff achieved a less than stellar result.  Plaintiff was deemed inellgible to receive any compensatory education.  Rep. and Rec. at 16-19.  Plaintiff lost on most of her claims raised in the District Court.  Rep. and Rec. at 19-20; 28-38.  Furthermore, the relief ultimately obtained, was no better than the relief Plaintiff requested in settlement, and the District offered that relief, if only Plaintiff could provide evidence supporting her attorney's fees.  Ex. 1.  Plaintiff ultimately refused to provide evidence of her attorney's fees and rejected the District's settlement offer.  Ex. 1.  Moreover, if Plaintiff would have accepted this offer at the time, perhaps D.M. would not have faced the problems that led to the difficulties in implementing the Court's award of additional assessments.  *See* Monthly Joint Status Reports [43-50] (detailing the issues preventing the District from evaluating D.M.).  Importantly, through no fault of the District, D.M. still has not benefited from the assessments awarded by the Court.

Nonetheless, the District, in good faith, attempted to buy its peace in this case for $80,000.00 in attorney's fees.  Notice of Settlement.  Still, Plaintiff's attorney wants more.  The Court should deny this additional motion in its entirety.  The IDEA requires that if the Court finds the parent unreasonably protracted the final resolution of the action, "the court shall reduce, accordingly, the amount of attorneys' fees awarded under this section."  20 U.S.C. § 1415 (i)(3)(F)(i).

The previous settlement of $80,000.00 more than fairly compensates Plaintiff's counsel in light of the incredibly poor result achieved in this case and the harm caused to D.M. by

Plaintiff's failure to make a good faith effort to bring a timely resolution to this dispute.  As evidenced by Exhibit 1, the District was prepared to accept Plaintiff's initial request of five evaluations plus attorney's fees and asked some clarifying questions regarding the terms.  Ex. 1 at 4-5.  When Plaintiff's counsel clarified the terms by adding additional terms, the District still agreed (with the exception of having the FBA performed by the school the student was attending) but conditioned its agreement on the provision of evidence supporting the attorney's fees.  *Id.* at 2-4.  But, because Plaintiff's counsel constructs her fees invoices at the conclusion of the case, she was unable to provide one at the time (and refused to do so thereafter).  *Id.* at 1.  Consequently – and especially in light of the fact that only person to benefit from this litigation has been Plaintiff's counsel – the Court should not award any additional attorney's fees.

<u>CONCLUSION</u>

The Court should deny Plaintiff's Motion for Attorney's fees.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

PATRICA OXENDINE
Acting Assistant Deputy Attorney General
Civil Litigation Division

*Glenn T. Marrow*
GLENN T. MARROW
Chief, Civil Litigation Division Section II[1]

---

[1] Admitted it the State of Maryland and the State of New York and practicing under supervision of George Valentine, a member of the District of Columbia bar, pursuant to D.C. Rule 49(a).

*/s/ Aaron J. Finkhousen*
AARON J. FINKHOUSEN [1010044]
Assistant Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, DC 20001
(202) 724-7334
(202) 730-0493 (fax)
aaron.finkhousen@dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

**ANISSA JONES**                             :
                                                          :
                                                          :
                    **Plaintiff,**               :
                                                          :        **Civ. Action No. 15-1505(BAH/GMH)**
          **v.**                                     :
                                                          :
**DISTRICT OF COLUMBIA,**        :
                                                          :
                    **Defendant.**            :

_____

<u>ORDER</u>

Upon consideration of Plaintiff's Motion for Fees and Costs, Defendant's opposition

thereto and Plaintiff's reply, it is this _____ day of _____, 2018,

**ORDERED,** that Plaintiff's Motion for Fees and Costs is **DENIED**; and it is

**FURTHER ORDERED,** that this case is closed.

**SO ORDERED.**

                                        _____
                                        Judge Beryl Howell
                                        United States District Court
                                        for the District of Columbia